451 A.2d 249

Peter J. MEDVE

v.

Kevin J. WALAKOVITS.

**Appeal of Richard J. ORLOSKI.**

Superior Court of Pennsylvania.

Argued Feb. 22, 1982.

Filed Oct. 1, 1982.

Petition for Allowance of Appeal Denied Feb. 17, 1983.

Richard P. Abraham, Philadelphia, for appellant.

William G. Ross, Bethlehem, for appellee.

Howland W. Abramson, Philadelphia, for participating party.

Before SPAETH, BROSKY and BECK, JJ.

BROSKY, Judge:

This is an appeal from an order holding an attorney in contempt of court. The event which precipitated the contempt order was counsel's late appearance at a pre-trial settlement conference. A novel issue of law is presented here: whether the element of intent necessary for a finding of contempt can be met by proof of recklessness. The trial court, in the person of Judge Mellenberg, did not address the case in precisely these terms. Nonetheless, we affirm the contempt order.

Appellant contends that his tardiness was the product of an oversight, rather than an intentional act; and that, therefore, he cannot be properly held in contempt. In particular, he states that he "lost track of time." Such inadvertence is not, he argues, the equivalent of intent. Were these the only relevant facts in the case, we would agree. However, there are other elements in the chain of events which complicate the case for appellant.

Richard Orloski, plaintiff's counsel in *Medve v. Walakovits,* was scheduled to appear at 10:15 a. m. for a pre-trial settlement conference with Judge Mellenberg. According to Orloski's own sworn statement, he was in the front entrance of the courthouse "between 10:00 a. m. and 10:05 a. m." He relates that immediately after this he met another attorney in the corridor and that they decided to go up to the fourth floor to strike another case from the trial list. When they arrived, neither the Court Administrator nor his deputy were present. "The secretary in the Court Administrator's office indicated that we would have to wait for the Administrator or his Deputy, which we did." (Statement in absence of transcript, Orloski, p. 4.)

After the administrator returned and he completed his business, Orloski went down four flights of stairs to get his papers for the pre-trial conference. At this point, he discovered that the time was about 10:25.

Mr. Orloski states that he then ran up five flights of stairs to the floor where the conference was to be held. Having arrived on the fifth floor, he saw counsel for the defendant, Walakovits, in conversation in the hallway, assumed that the conferences were running late and sat down to read a newspaper. When opposing counsel started to leave, at "about 10:35 a. m.," Orloski asked and found out that the pre-trial conference in his case had been called in his absence and that the case was stricken. Orloski then proceeded to the conference room where he tendered his apologies and explanation to the court.

A $50 fine, payable to opposing counsel, was imposed on appellant as a summary punishment for contempt of court. The power of a court to take such an action is limited to certain circumstances. In relevant part, they are: "(2) Disobedience or neglect by officers, parties . . . to the lawful process of the court." 42 Pa.C.S.A. § 4131.

Statutory phrases as general as this one must be given definitional parameters by the decision of the courts. This is especially appropriate when, as here, the area is within the inherent powers of the courts. Decisions in recent years

have added greatly to the interpretive gloss in this particular category—that of summarily holding attorneys in contempt for non-appearance or tardiness at court proceedings. Noting the factual contexts of these cases will put Orloski's conduct in its legal perspective.

In 1976, the case of *Commonwealth v. Washington,* 466 Pa. 506, 353 A.2d 806 (1976), established that the element of intent was a necessary adjunct to disobedience or neglect in order for contempt to be proven. The defendant in that case failed to appear in court and a county detective found him asleep at home. "Appellant apologized to the court, and explained that he had gone to a party the night before and thought he had set his alarm." 466 Pa. at 507, 353 A.2d at 806–7. Justice Manderino found that intent could not be shown under these circumstances.

A year later, another case with the same name reversed a contempt order for failure to appear in court because the judge knew that the attorney was engaged in another court and because the record did not show that the attorney had been notified about that scheduled appearance. Here again, the lack of requisite intent decided the case. *Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977).

Neither of the *Washington* cases was very radical, once the element of intent was accepted. One could hardly have the intent not to appear in court while sleeping or if one did not even know about his scheduled appearance. The facts of a 1980 case gave the Supreme Court of the Commonwealth an opportunity to add depth to the definitional matrix. Justice Roberts wrote for the court that an attorney who called and notified the court when he knew he would be late due to another court proceeding running longer than expected was not contemptuous for lack of intent. *In the Matter of Mandell,* 489 Pa. 522, at 526, 414 A.2d 1013 at 1015 (1980).

The last contempt reversal we shall refer to is *Weingrad v. Lippy,* 300 Pa.Super. 76, 445 A.2d 1306 (1982). In that case, suggested points for charge were delivered to the trial judge 23 minutes late. While the judge had made it clear that he wanted the points delivered to him on time, the

Superior Court found that the attorney had not acted with "wrongful intent" in that he had asked his secretary to come in an hour early to type the points. 300 Pa.Super. at 80, 445 A.2d at 1308.

In contrast with these four reversed contempt orders is *Commonwealth v. Marcone,* 487 Pa. 572, 410 A.2d 759 (1980). In that case, an attorney, informed that opposing counsel would be late, waited for his arrival instead of going directly to court. By the time he stopped waiting and got to court the proceeding was over. The attorney had been aware of the time and that he would be late arriving in court as a consequence of waiting for opposing counsel.

How can these cases best be used in analyzing Orloski's actions for the presence, *vel non,* of intent? Rather than merely reciting, out of context, the legal rules or formulas stated in the cases, more guidance can be gained by looking to the factual calculus involved.

Orloski does not have the benefit of the exonerating circumstances present in the cases in which contempt orders were reversed. Unlike the appellant in the 1976 *Washington* case, he was both conscious and, at some points, aware of the time. He did not notify the court that he would be late, as did the attorney in the 1977 *Washington* case. There were no necessary time conflicts with other court proceedings as in the latter case or *Mandell.* (The case could have been stricken at any later time in the day.) Nor is there evidence of a good faith effort to comply as was obvious in *Weingrad* —at least not until after the harm was done and he was already late.

However, on the other side, Orloski also lacks the deliberate, conscious decision to be late that figured so significantly in the affirmance of Marcone's contempt order.[1]

As the above analysis demonstrates, prior case law is not dispositive in deciding the outcome of this appeal. The type of situation present here did not appear in those cases.

1. Orloski, like Marcone, did miss the entire proceeding.

In making our decision here, we make note of two crucial moments in the chain of events leading up to Orloski's tardy arrival. The first occurred when he decided, immediately after 10:00 to 10:05, to go to the Court Administrator's office to strike a case. Considering his obligation to be in conference at 10:15, this was already "cutting it close."

The second critical moment occurred when Orloski decided to wait for the Court Administrator's return. We cannot hold that at the moment he decided to wait that he also consciously intended to be late for the pre-trial conference. Orloski denies any such intent and, of course, this court cannot ascertain the specific subjective mental state of any person.

But such an admission or mind-reading is superfluous because Orloski can be held, as a matter of law, to have intended the natural consequences of his acts. The law of intentional torts and of most specific intent crimes is satisfied with such a method of proof. We hold that it is equally suitable here.

As previously stated, Orloski met another attorney just after 10:00 to 10:05 on the first floor. They proceeded to the fourth floor, spoke to a secretary and then waited for an Administrator's return. Even had an Administrator arrived immediately, it is highly unlikely that Orloski could have transacted his business and gotten to the conference on time. At the moment he decided to wait for the Administrator, his resulting tardiness at the conference appears to have been substantially certain. At the very least, he acted with reckless disregard for such tardiness. Either such substantial certainty or such reckless disregard will suffice to establish the intent required for contempt. It is to be emphasized that there existed here a conscious, deliberate act which gave rise to a substantial certainty of the forbidden result; and, alternatively, that act evinced a reckless disregard for the likely and forbidden result.

Case law in this area does not directly support this conclusion. The question has simply not been treated heretofore.

We hold that intent can be proved through either the substantial certainty or reckless disregard methods described herein. We adopt this standard because the consequences of not doing so are unsatisfactory. By not allowing intent to be shown by the implicators of one's deliberate acts, legitimate interests of the courts to their dignity and efficient operation of their court calendar would have no protection.

Order affirmed.