631 A.2d 645

Dale Lynn McCUSKER, Appellee,

v.

Cathy A. McCUSKER,

Appeal of Gary D. WILT, Esquire.

Superior Court of Pennsylvania.

Argued June 22, 1993.

Filed Sept. 16, 1993.

Gary D. Wilt, in pro. per.

Before ROWLEY, President Judge, and TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

This case involves an appeal of the order of the Court of Common Pleas of Fulton County finding Gary D. Wilt in contempt of court.  We affirm.

The facts of record disclose that Wilt began his legal representation of the defendant, Cathy A. McCusker, as of January 29, 1992, with his filing of a Motion To Vacate Order Re Custody. In the ensuing months, an agreement was reached between the litigants resulting in a sharing of legal and physical custody of the parties' minor child. Thereafter, on August 24, 1992, the natural father filed a complaint for "primary residential custody" on the ground that shared custody was no longer in the best interests of the minor child.

The defendant's attorney's request for "Special Relief" was deferred on October 5, 1992, pending an *in camera* conference with counsel to determine an interim disposition to be held at the request of either party and scheduled by the court administrator.

On motion of Attorney Wilt, an *in camera* conference was scheduled by the court for October 16, 1992. This meeting resulted in an order of even date reinstating the initial custody order of March 5, 1992 (Shared custody). Post-trial motions were filed by counsel for the defendant on November 2, 1992. On petition of the defendant, a hearing was scheduled on December 7, 1992, at 9:30 a.m. by the court. On November 30, 1992, Attorney Wilt prepared a motion for a continuance of the December 7, 1992, custody hearing for the reason that he was scheduled to appear in Bedford County criminal court on two cases the same day and time. By order issued on December 2, 1992, the request for a continuance was denied by the Fulton County court.

On the date and time set for the custody hearing, Attorney Wilt was not present in court. He appeared at 10:10 a.m., an hour and ten minutes after the time listed to begin taking testimony. He gave as his reason for being late the necessity to appear at 9:30 a.m. in Bedford County on two criminal cases which were scheduled for trial, and he was there to select juries for each case. However, while at the Bedford County court, he was able to convince opposing counsel and the trial court to continue both cases so that he could proceed in the instant custody matter.

Attorney Wilt offered that, by an "oversight on [his] part", he had applied for a continuation in both Bedford County cases *at the same time* that he requested a continuance in the present case. Because Bedford County court had taken *no* action in either criminal case and the jury had assembled there, he "felt that [he] had to be there" in Bedford County.

The Fulton County court judge pointed out that as early as October of 1992, Attorney Wilt was aware of the scheduled December 2, 1992, hearing at 9:30 a.m. on the *McCusker* case. The court also remarked on communicating with the court administrator of Bedford County at approximately 10:00 a.m. that morning and being informed that Attorney Wilt had advised Bedford County of his application for a continuance in Fulton County because of the conflict, but Bedford County court personnel heard nothing from Attorney Wilt thereafter. As a result, the Bedford County judge directed the court administrator to have all parties present in the criminal cases scheduled to appear at 9:30 a.m. on December 2, 1992.

Further, of record appears the following discourse between counsel for the defendant and the court:

[THE COURT]: The impression that I was left is that had they [Bedford County officials] been informed of the situation in a timely fashion, that there would have been a continuance granted in Bedford County so you could have been here at 9:30 this morning. Is that accurate or?

MR. WILT: I don't know as to the impression. I cannot say that their response would have been had I told them immediately after hearing from you, or I didn't hear from you actually, from the Court Administrator that you had denied the continuance here.

I don't know what they would have done, but certainly they were, as of the latter part of last week, they had in Bedford County both requests for a continuance and acknowledged that the proceeding was pending here also.

\* \* \*

510

THE COURT: I gather you got a continuance this morning?

MR. WILT: I did indeed.

\*       \*       \*

THE COURT: Well, I certainly don't understand why you wouldn't communicate with the Court over there to tell them what the outcome was of your continuance request here. You knew you had an obligation to be here this morning at 9:30.

You knew that they had a continuance request pending before them over there that was awaiting determination of this continuance request, and I just fail to understand why you didn't at least communicate with them when you knew the outcome of this.

You knew you had to be in two places at one time. You knew it's physically impossible to do that and *you knew that you were obliged to be here for, at least, the last two and a half months, and you simply failed to show up here, Mr. Wilt.*

That's contemptuous conduct. You didn't communicate with us this morning to tell us what the situation was. We found out this morning when we came into court, and your client was very upset and nervous that she had been told at the very last minute that she would have to find other counsel. She informed me she was unsuccessful in doing that because she found out at 11:00 Friday morning, I think it was, and this is just not a way to start a proceeding like this.

Mr. Gordon [counsel for the plaintiff/father] has also informed us in court that he has several expert witnesses who are here prepared to testify this morning. They're being paid fees to be here, I assume. They have a schedule to try to maintain.

If we don't conclude this case today, I don't know whether it'll be concluded. It may be many months until we can find another date to conclude the case because of the court schedule, and I just don't know that the explanation given here to what has happened this morning is an acceptable explanation.

MR. WILT: If I may, Judge. I think if I can read directly into your ire that you have a conclusion that I knew that the Court in Bedford County would continue the case if I had renewed my request, and I had no such knowledge or inkling. I didn't know.

THE COURT: The point is you made no effort to find out. If you had made the effort last week and the court had denied your request after you learned what the outcome of the motion was here, this might be in a different posture. Although, I don't know what the posture would be.

We're not at that point. The point is that was never—that request was never made. So we'll never know what the Court would have done based on what happened this morning.

\* \* \*

We may not get the case done for many months because of what took place because of your thoughtlessness just because you didn't follow through and to check with the Court in Bedford County about this.

\* \* \*

Particularly when as much notice was given as was given in this case. We are talking about—I think you knew about this as early as September and it's now December the 7th. There's just no excuse for that.

\* \* \*

MR. GORDON [Counsel for the plaintiff/father]: ... I would have been happy to start the hearing at 10:30.

I was not apprised. I did not know that there was either being a no showing or late showing by Mr. Wilt in this case. It seems to me accommodations could have been made.

MR. WILT: The truth is that I did not know this morning whether it was going to be an hour or how long it would be. *I was going. I knew I had to be there for the purpose of drawing the jury, and I assumed that I would be able to get that concluded by ... the 11:00 so time[] that we had calculated,* and that's—

512

THE COURT: You knew we would be here at 9:30 this morning. You knew that we would be here because the continuance was denied. That's what you knew. You absolutely knew that much as of last week and that's the distressing part and we were here.

Everybody was here with the exception of one individual, Mr. Wilt, and I don't think that you did what you should have done in terms of communicating with the Court in Bedford County about your situation here in Fulton County, your obligation to this Court, and that really is—had [Bedford County] Judge ... been apprised of this, had he then denied your continuance request, then we would have had to take a second look at the thing and maybe come to some other conclusion, but that was never done, and that's the part that's of concern.

*You just chose to pick and choose between two matters that you were obligated to be before the Court on. One which you knew you absolutely had to be here because the continuance request was denied, and the other one there was one pending.*

*As far as I am aware, you didn't inquire as to the status of that after this continuance requesting this Court was denied. You just simply chose between the two where a ruling by the Judge had been made on the one request and it was made here, and I suspect that this matter was scheduled a significant amount of time prior to the one in Bedford County in spite of the procedural posture of that case or cases over there.*

So let's get to the hearing [on custody] and I'll decide what I'm going to do about this matter after I've had a chance to reflect on it adequately.

All right.

N.T. 12/7/92 at 7–8, 9, 10–15 (Emphasis added).

In the reproduced record we find a copy of the December 7, 1992, transcript of the Bedford County case. There, when the court inquired as to Attorney Wilt's request for a continuance of the criminal case because of having a custody matter to be presented in Fulton County that same day, Attorney Wilt responded:

That's correct, and the judge there [in Fulton County] denied a request for a continuance, and *it is my error in not advising you of that last week.*

RR 13A (Emphasis added).

■ With the court finding the appellant in contempt, the penalty phase of the order was the payment of opposing counsel's additional fees and costs incurred as a result of the delay.[1] This appeal was perfected and challenges the contempt order on the ground that "there is no intentional and willful commission of contemptuous act", and, further, the punishment imposed is excessive.

In this Commonwealth, the power to impose summary punishment for contempt of court is restricted to three situations, one of which is applicable here:

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

As amended December 20, 1982, P.L. 1409, No. 326, art. II, § 201, 42 Pa.C.S.A. § 4132(2) (Supp.1992). Under Section 4132, it is beyond peradventure that prior to a finding of contempt, where an attorney fails to appear or appears late for a court proceeding set by court order, there must be a showing that the failure to show or appear tardy was intentional. *In re Matter of Ring,* 492 Pa. 407, 424 A.2d 1255 (1981); *Commonwealth v. Washington,* 470 Pa. 199, 368 A.2d 263 (1977); *In re James,* 307 Pa.Super. 570, 453 A.2d 1033 (1982).

In *United States v. Seale,* 461 F.2d 345, 368 (7th Cir.1972), the court thoroughly examined the need for proof of the element of intent, and found that the minimum intent required to prove contempt is "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." Accord *Washington,* supra.

However, this Court has established that direct (as well as subjective) intent is not necessary where a reckless disregard for the directions of the court can be proven. *Matter of*

1. It should be noted that the case was not completed and had to be rescheduled, the listing of which does not appear of record.

*James,* 323 Pa.Super. 149, 470 A.2d 174, 176 (1984); *Medve v. Walakovits,* 305 Pa.Super. 75, 451 A.2d 249, 252 (1982), cert. denied, 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983). In each case, the appellants did not fail to appear. Rather, they merely appeared late and were found to be in contempt of the courts' directives. On appeal, we sustained the contempt findings on the ground that each had engaged in reckless disregard for the orders of the court. This was held to be tantamount to an intentional contumacious act.

It is abundantly clear that the appellant here acted "recklessly" in not only appearing late at the custody hearing in Fulton County, but neglecting to advise the Bedford County court that his request for a continuance in Fulton County had been denied.

The appellant admitted that, albeit aware of the Fulton County hearing and the denial of his request for a continuance there, he elected to appear in Bedford County on the date scheduled for the Fulton County custody case to seek a continuance of the two criminal cases. His failure to act sooner is attributed to an "error" on his part *in permitting the passage of a week* without advising the Bedford County court of the Fulton County court's actions in denying his request for a continuance.

In *Medve,* supra, the attorney was aware of his obligation to appear at a pre-trial settlement at a certain hour and decided to attend to other matters instead. He claimed that his lateness was the result of oversight and not an intentional act. Nonetheless, this Court held that his tardiness was a result of a deliberate act which gave rise to a substantial certainty of the proscribed result or a reckless disregard of that result, and that the requisite intent could thereby be established.

The lateness of Wilt in this case is quite similar. Once Wilt chose to attend the Bedford County cases *and seek a continuance,* this eleventh-hour conduct was such that he acted with a substantial certainty that he would be tardy or with reckless disregard of such tardiness. Especially given that the appellant delayed a week before informing the Bedford County

court of the Fulton County court's denial of his continuance. Accordingly, under the rule of *Medve* (followed in *James*, supra), we affirm the order appealed.

■ Order affirmed.[2]

**2.** The issue for review claims the absence of any "intent" on the part of the appellant sufficient to be contemptuous, along with the appellant's belief that the punishment imposed was "excessive". Under the facts recounted supra, when viewed against the applicable law, we find no merit to this "excessiveness" contention.