**Michelle STAHL and James Stahl, as Parents and Natural Guardians of Heaven Lee Angel Stahl, a Minor and Michelle Stahl and James Stahl, Husband and Wife in Their Own Right, Appellees,**

v.

**Julia REDCAY, D.O., and OB/GYN Associates of Lewisburg, Appellees.**

**Michelle Stahl and James Stahl, as Parents and Natural Guardians of Heaven Lee Angel Stahl, a Minor and Michelle Stahl and James Stahl, Husband and Wife in Their Own Right, Appellees,**

v.

**Evangelical Hospital and James V. McDonald, M.D. and Lewisburg Pediatrics, Appellees.**

**Appeal of: Michael M. Badowski, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.
Filed March 17, 2006.
Reargument Denied May 18, 2006.

Jonathan D. Herbst, Philadelphia, for appellant.

Joseph P. Lenahan, Scranton, for Stahl, appellees.

Clifford A. Rieders, Williamsport, for Pennsylvania Trial Lawyers, Amicus Curiae.

BEFORE: BENDER, GANTMAN, and JOHNSON, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Michael M. Badowski, Esquire, asks us to determine whether the Union County Court of Common Pleas erred when it found him in civil contempt for causing a mistrial in this medical malpractice action and imposed sanctions in the amount of $52,088.02, payable to Joseph Lenahan, Esquire, counsel for Appellees, Michelle Stahl and James Stahl, as parents and natural guardians of Heaven Lee Angel Stahl, a minor, and Michelle Stahl and James Stahl, husband and wife in their own right. We hold the court's ruling subject to review has no foundation

of record, absent a definite, clear, and specific prior order in the record prohibiting the use at trial of evidence of mother's smoking during pregnancy as a cause of the minor child's alleged birth defects. Accordingly, we reverse.

¶ 2 The trial court set forth most of the relevant facts and procedural history underlying this appeal as follows:

[Appellees] had instituted a medical malpractice case against defendants arising out of the birth and serious injuries to the minor plaintiff. Prior to the trial, there were many discussions and pretrial motions concerning the [Appellee] mother's smoking and its effect on liability. The court ruled that testimony about smoking would be allowed, with cautionary instructions. (*See* attached order dated April 7, 2004). However, there was only one witness who indicated that smoking in fact caused the minor child's injuries. That witness was a nurse/mid-wife, and the court ruled that her opinion was inadmissible. (*See* attached order dated January 30, 2004). A review of the expert reports shows that no other medical witness was offering to testify that a mother's smoking during pregnancy **caused** the type of injuries that this minor plaintiff suffered.

Nevertheless, during his opening statements, counsel for defendant Redcay launched into a long recitation of the poisonous [effects] of a pregnant mother's smoking on the fetus. He concluded by saying that the defense had "a host of well-qualified experts" to support the proposition that smoking **causes** microcephaly. (*See* trial transcript pp. 111–119 attached hereto). In fact the only witness that he could cite for this proposition was nurse/mid-wife Kehoe whose testimony had been ruled inadmissible by this court. [Appellees']

counsel painfully asked for a mistrial indicating that the jury had now been poisoned by defense counsel. This court reluctantly agreed and granted a mistrial.

It had been anticipated that this trial would last three to four weeks, a long time for small county courts, and lots of time for litigating attorneys. [Appellees'] counsel had carefully been seeking to define issues to avoid a mistrial. [Appellees] had expended a significant amount of non-refundable costs and attorneys' time. After the mistrial, [Appellees'] counsel filed for sanctions in the form of a contempt petition seeking costs and attorney's fees from defendant Redcay's attorney for causing the mistrial.

After proper notice, a hearing was held on the petition for sanctions on June 7, 2004. By order of June 7, 2004, this court made specific findings of fact that defendant Redcay's counsel has acted willfully and recklessly in his statements to the jury. This court conservatively ordered counsel for defendant Redcay to pay attorney's fees and costs to plaintiff's counsel in the amount of $52,088.02. Counsel for defendant Redcay appealed.

This court found that defendant Redcay's counsel recklessly and willfully poisoned this jury and caused a mistrial. Counsel disobeyed the order of this court by introducing the excluded testimony of the nurse/mid-wife and referring to other non-existent experts, thus obstructing the administration of justice. *See* 42 Pa.C.S.A. § 4132. Counsel's behavior was also willful and reckless and, thus, dilatory, obdurate, and vexatious during the pendency of this matter. *See* 42 Pa.C.S.A. § 2503(7). Counsel was given notice of the claim. A hearing was held in which defendant Redcay's counsel participated and was

represented by counsel. This court found that defendant Redcay's counsel caused the mistrial by willfully and recklessly stating facts that were not and would not be in the record of this case. He said that "a host of extremely well-qualified experts" (p. 112 of trial transcript) would testify that "what has transpired in the events of this pregnancy before three weeks of her delivery" was caused by chemicals associated with cigarette smoking. The only witness that said smoking "caused" the minor child's injuries was the nurse/midwife whose testimony was excluded. There was no excuse for these comments which obviously tainted, and were meant to taint this jury at the outset. [Appellees], the Union County court staff, the jurors, and this court have been put to considerable additional time and expense by counsel's conduct. Counsel's conduct was contemptuous, obdurate, dilatory, and vexatious. The mistrial caused plaintiffs considerable costs. They should be reimbursed.

(Trial Court Opinion, dated July 28, 2004, at 2–5). Appellant filed his notice of appeal on July 16, 2004. On July 22, 2004, Appellant filed with this Court an application for stay of the new trial pending his appeal. On July 27, 2004, Appellees filed an answer to Appellant's application for stay and an application to quash the appeal. By *per curiam* order dated July 29, 2004, this Court granted Appellant's application for stay. On August 31, 2004, this Court issued a second *per curiam* order, which denied Appellees' motion to quash the appeal, without prejudice to their right to renew it before the panel assigned to the appeal.[1]

¶ 3 Appellant raises the following issues for our review:

IS IT A CLEAR ABUSE OF DISCRETION TO HOLD COUNSEL IN CONTEMPT FOR DISOBEYING A COURT ORDER THAT WAS ENTERED *EX POST FACTO?*

IS THE EVIDENCE SUFFICIENT TO HOLD COUNSEL IN CONTEMPT WHERE THERE IS NO COURT ORDER PROHIBITING THE CONTENTS OF COUNSEL'S OPENING STATEMENT?

IS THE EVIDENCE SUFFICIENT TO HOLD COUNSEL IN CONTEMPT WHERE THERE IS NO EVIDENCE

1. Appellant also filed a petition for permission to appeal the trial court's order entered September 21, 2004, **which certified its prior orders** of June 7, 2004 and June 24, 2004 for interlocutory appeal, pursuant to 42 Pa.C.S.A. § 702(b) (stating: "When a court..., in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order"). By *per curiam* order dated November 15, 2004, this Court denied Appellant's petition for permission to appeal, because Appellant's motion for trial court certification of those orders had not been timely filed. The November 15th order, in pertinent part, states:

The June 7, 2004 and June 18, 2004 orders were entered on the trial court docket on June 24, 2004. The docket indicates that [Appellant] filed an untimely motion for certification pursuant to 42 Pa.C.S. § 702(b) on September 13, 2004, 81 days after entry of the subject orders. Accordingly, the petition for permission to appeal is **DENIED**. [Appellant's] request to consolidate this appeal, if granted, with the appeal at No. 1121 MDA 2004[,] is **DENIED** as moot.

(Superior Court Order, filed November 15, 2004). As a result, we have before us for review only the appeal docketed at No. 1121 MDA 2004.

THAT COUNSEL ACTED WITH WRONGFUL INTENT OR INTENDED TO DISOBEY AN ORDER OF THE COURT?

WAS THE TRIAL COURT'S FINDING OF CONTEMPT A CLEAR ABUSE OF DISCRETION WHEN IT RULED THAT THE EVIDENCE IN SUPPORT OF TRIAL COUNSEL'S OPENING STATEMENT HAD BEEN PRECLUDED WHERE THE ORDER RELIED UPON DID NOT PRECLUDE THE INTRODUCTION OF EVIDENCE?

WAS THE TRIAL COURT'S FINDING OF CONTEMPT A CLEAR ABUSE OF DISCRETION WHERE COUNSEL WAS PREPARED TO ELICIT THE PROFFERED EVIDENCE FROM OPPOSING EXPERTS AND HIS CLIENT?

WAS THE TRIAL COURT'S FINDING OF CONTEMPT BASED UPON ERRORS OF LAW WHERE DEFENSE COUNSEL WAS PREPARED TO ELICIT THE PROFFERED EVIDENCE FROM OPPOSING EXPERTS, AS WELL AS HIS CLIENT, AND DEFENDANT'S PROOFS NEED NOT BE INTRODUCED WITHIN A REASONABLE DEGREE OF CERTAINTY?

(Appellant's Brief at 2).

¶ 4 Preliminarily, we address Appellees' motion to quash this appeal, which this Court denied without prejudice by order dated August 31, 2004. Appellees renew this motion in their appellate brief, arguing the order on appeal does not qualify for immediate review, because it is neither a final order nor an appealable interlocutory order. Moreover, Appellees claim established precedent confirms that an interlocutory award of disciplinary sanctions is not appealable until the resolution of the underlying case. Appellees further suggest that allowing an immediate appeal works to weaken the trial court's power to order sanctions during the pendency of the proceedings. Appellees respectfully ask this Court to quash Appellant's appeal for want of jurisdiction under the applicable law and rules of court.

¶ 5 In response, Appellant argues that, as a general rule, once the court imposes sanctions, a contempt order is a final order for appeal purposes. Appellant further claims Appellees' counsel could have easily avoided this appeal by not having demanded immediate payment of the monetary sanctions. Appellant refers us to the court's order, which did not specify a payment date. Appellant insists Appellees' counsel should have been content to wait for payment of the sanctions until conclusion of this case, instead of threatening to file a motion for further sanctions in which he intended to request a fine of $1,000.00/day until Appellant paid the sanctions. Under these circumstances, Appellant declares he had no choice but to file an immediate appeal.

¶ 6 In the alternative, Appellant suggests the court actually found him in "criminal" contempt, and the court's sanctions order is therefore immediately appealable, because the court referenced 42 Pa.C.S.A. § 4132. In support of his contention, Appellant cites *Commonwealth v. Ashton*, 824 A.2d 1198 (Pa.Super.2003); *Diamond v. Diamond*, 715 A.2d 1190 (Pa.Super.1998); *McCusker v. McCusker*, 428 Pa.Super. 506, 631 A.2d 645 (1993) *appeal denied*, 539 Pa. 637, 650 A.2d 52 (1994). Appellant also calls the sanctions order an "attachment," but without elaboration, presumably to qualify for an immediate appeal as of right under Pa.R.A.P. 311(a)(2). Finally, Appellant submits the contempt/sanctions order is immediately appealable as a "collateral order" under Pa.R.A.P. 313. Appellant concludes:

The trial court's order [dated] June 22, 2004, when viewed in conjunction with its "clarifying order" of June 7, 2004, has such a chilling [e]ffect on [Appellant], which would serve to deprive all parties, including [Appellant's] clients, from having their counsel provide zealous representation within the bounds of the law as required by the Pennsylvania Rules of Professional Conduct and would otherwise deprive [d]efendants of a fair trial. The **issue of [Appellant's] conduct is so intertwined with the merits of the underlying** case that [d]efendants would be deprived of a fair trial if this case were permitted to proceed to trial without [Appellant's] appeal on the contempt citation not having been first resolved. For these reasons, there is no question that the Order of the trial court dated June 22, 2004, finding [Appellant] in contempt of court and imposing monetary sanctions in the amount of $52,088.02, is immediately appealable. Accordingly, Appellees' Motion to Quash the appeal must be denied.

(Appellant's Brief in Opposition to Appellees' Motion to Quash Appeal, filed 8/6/04, at 19–20) (emphasis added). Appellant concludes he is entitled to an immediate appeal. For the following reasons, we agree.

 ¶ 7 Pennsylvania law makes clear:

[A]n appeal may be taken from: (1) a final order or an order certified as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311, 42 Pa. C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313).

*Pace v. Thomas Jefferson University Hosp.,* 717 A.2d 539, 540 (Pa.Super.1998). A final order is one that disposes of all the parties and all the claims, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination. *In re N.B.,* 817 A.2d 530, 533 (Pa.Super.2003) (citing Pa.R.A.P. 341(b)(1)-(3)). "[T]he appealability of an order goes directly to the jurisdiction of the Court asked to review the order." *Pace, supra* (citing *Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985)).

 ¶ 8 A collateral order is defined in Rule 313 as follows:

### Rule 313. Collateral Orders

\* \* \*

**(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b). Our Supreme Court explained:

[T]he collateral order doctrine is a specialized practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule.

*Melvin v. Doe,* 575 Pa. 264, 272, 836 A.2d 42, 47 (2003). "To that end, each prong of the collateral order doctrine must be met before an order may be considered collateral." *Id.* To qualify as a collateral order under Rule 313, it is not sufficient that the issue under review is important to a particular party; it "must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* (quoting *Geniviva v. Frisk,* 555 Pa. 589, 598, 725 A.2d 1209, 1213–14 (1999)). *See, e.g., Ben*

*v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999) (allowing appeal from discovery order compelling production of putatively privileged documents, where resolution of issue of whether documents were subject to executive or statutory privilege implicated rights rooted in public policy, and affected individuals other than those involved in particular litigation; in weighing competing consideration of costs of piecemeal review against costs of delay, public interests expressed in form of executive privilege and statutory privileges tipped balance in favor of immediate appellate review; order permitting discovery of investigative files was such that if review were postponed until final judgment in case, claim would be irreparably lost, as disclosure of documents could not be undone).

¶ 9 With respect to the "immediate appealability" issue before us, we also consider whether the trial court's contempt finding is civil or criminal in nature, because "the imposition of a criminal sanction is collateral to the underlying proceeding in which it occurs ..., by its nature, it is directed to an individual's independent conduct and not to the ultimate issues which are at stake in the action. A person's right to appeal from a criminal contempt citation is immediate." *Ashton, supra* at 1201.

¶ 10 As the Court explained:

The distinction between criminal and civil contempt is...a distinction between two permissible judicial responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of some private party, proceedings to enforce compliance with the decree of the court are civil in nature.

The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for the losses sustained.

The factors generally said to point to a civil contempt are these: (1)[w]here the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled [captioned] in the original...action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the [respondent] in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in nature and do not of themselves constitute crimes or conduct by the [respondent] so contumelious that the court is impelled to act on its own motion.

*Id.* at 1202 (quoting *Knaus v. Knaus*, 387 Pa. 370, 378, 127 A.2d 669, 673 (1956)).

[T]he dividing line between civil and criminal contempt [is] sometimes shadowy or obscure, but the same facts or conduct may constitute or amount to both civil and criminal contempt. Moreover, it is clear that a Court can for present or past acts of misbehavior amounting to civil contempt impose an unconditional compensatory fine and/or a conditional fine and imprisonment, and such fine may be payable to the United States or to the Commonwealth or to

the county or the individual who was injured.

\* \* \*

[T]he court may, in a proceeding for civil contempt, impose the remedial punishment of a fine payable to an aggrieved [complainant] as compensation for the special damages he may have sustained by reason of the contumacious behavior of the offender.

\* \* \*

Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy. A judgment in a civil contempt proceeding for the benefit of a private [complainant] will, of course, incidentally vindicate the authority of the court just as on the other hand a criminal contempt judgment, which is punitive, may often advance private interests. But the test is the dominant purpose, not the incidental result.

*Brocker v. Brocker,* 429 Pa. 513, 519–23, 241 A.2d 336, 339–40 (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969) (internal citations and quotation marks omitted).

▆▆▆▆ ¶ 11 With regard to civil contempt, we observe: **"for a contempt order to be properly appealable, it is only necessary that the order impose sanc-** tions on the alleged contemnor, and no further court order be required before the sanctions take effect." *Rhoades v. Pryce,* 874 A.2d 148, 151 (Pa.Super.2005) *(en banc ), appeal denied,* 578 Pa. 695, 851 A.2d 142 (2004) (emphasis in original) (quoting *Foulk v. Foulk,* 789 A.2d 254, 258 (Pa.Super.2001) *(en banc )).* Thus, civil contempt orders imposing sanctions generally constitute final, appealable orders.[2] *Rhoades, supra. See also Lachat v. Hinchliffe,* 769 A.2d 481, 488 (Pa.Super.2001) (stating civil contempt paired with sanctions constitutes final, appealable order); *Diamond v. Diamond,* 792 A.2d 597 (Pa.Super.2002) (stating contempt order with sanctions is final and appealable).

▆▆▆▆ ¶ 12 The complainants in the instant case are private persons, not government agencies. The caption from the original action continues in the contempt proceedings. The court's contempt/sanctions order affords relief to private persons. The relief requested is for the benefit of complainants. The actions, upon which the contempt/sanctions order is based, do not constitute crimes and are civil in nature. *See Ashton, supra. See also* Findings of Fact and Order, dated June 7, 2004 and June 22, 2004, and entered June 24, 2004; R.R. 1667a–1669a. Thus, the contempt/sanctions order at issue is civil in nature and immediately appealable. *See Rhoades, supra.* As there is no impediment to our jurisdiction, we move to the merits of the case.

**2.** We note, however, that under prevailing Pennsylvania law a civil contempt ruling with sanctions involving discovery orders remains interlocutory and not immediately appealable. *See, e.g., Markey v. Marino,* 361 Pa.Super. 92, 521 A.2d 942 (1987), *appeal denied,* 516 Pa. 614, 531 A.2d 781 (1987) (quashing appeal and stating: "As a general rule, this Court will not provide interim supervision of discov- ery proceedings conducted in connection with litigation pending in the several trial courts. In the absence of unusual circumstances, we will not review discovery or sanction orders prior to a final judgment in the main action."). *Compare Rhoades, supra* (reviewing civil contempt/sanctions order directing payment of former spouse's attorney fees).

¶ 13 On appeal, Appellant first argues the proponent of civil contempt must demonstrate willful non-compliance with respect to a definite, clear, and specific court order. (Appellant's Brief at 17). The trial court did not issue any order prohibiting the use of evidence of mother's smoking during pregnancy as a cause of child's alleged birth defects. In fact, the court denied three motions *in limine* to prohibit the use of evidence of mother's smoking during pregnancy. Appellant also submits the defense expert witness reports and testimony supplied sufficient evidence to establish that smoking caused the child's alleged birth defects. Appellant contends he would have strengthened this evidence at trial through his skilled cross-examination of Appellees' own expert witnesses. Second, Appellant argues criminal contempt could not be established absent evidence of his intentional disobedience, intentional neglect of the lawful process of the court, or misconduct with the intent to obstruct justice. Appellant concludes the record does not support either civil or criminal contempt and requests this Court to reverse the contempt and companion sanctions order.

¶ 14 In response, Appellees insist the contempt finding and sanctions were appropriate under the circumstances of this case. First, there was no expert witness testimony to support Appellant's blatant statements that smoking during pregnancy causes microcephaly. The trial court had closely monitored the evidence with motions *in limine* and, in an undocumented teleconference, limited the admission of smoking during pregnancy at trial. Smoking could be presented only as a "risk factor" of microcephaly, not a cause. Given Appellant's willful misstatement in violation of a "court order," the court had statutory authority to impose sanctions under 42 Pa.C.S.A. § 4132.[3] Second, the civil contempt sanctions compensate aggrieved parties, whereas criminal contempt sanctions punish contumacious litigants. The sanctions imposed compensated Appellees and their counsel for costs associated with the mistrial. Third, Appellees maintain the court's sanctions are justified because Appellant's remarks concerning causation had absolutely no evidentiary basis. Appellees maintain the appeal is interlocutory in any event, because the trial court's order did not dispose of all claims and all parties. Appellees conclude this Court should affirm the trial court's order, or, in the alternative, quash the appeal. (*Id.* at 29).

¶ 15 "This Court will not reverse or modify a final decree unless there has been an error of law or an abuse of discretion, or if the findings are not supported by the record, or there has been a capricious disbelief of the credible evidence." *Diamond, supra* at 600 (quoting *Mrozek v. James*, 780 A.2d 670, 673 (Pa.Super.2001)).

Furthermore [e]ach court is the exclusive judge of contempts against its process, and on appeal its actions will be

---

**3.** Section 4132 provides:

**§ 4132. Attachment and summary punishment for contempts**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

reversed only when a plain abuse of discretion occurs. In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence.

*Id.* at 673 (internal citations and quotation marks omitted).

¶ 16 This Court has stated:

It is improper for counsel to present facts to the jury which are not in evidence and which are prejudicial to the opposing party....

\* \* \*

It is the duty of the trial judge to take affirmative steps to attempt to cure harm, once an offensive remark has been objected to. However, there are certain instances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint.

*Young v. Washington Hosp.,* 761 A.2d 559, 561–62 (Pa.Super.2000), *appeal denied,* 566 Pa. 668, 782 A.2d 548 (2001).

 ¶ 17 The well-settled law governing contempt is as follows:

To be punished for contempt, a party must not only have violated a court order, but that order must have been **"definite, clear, and specific**—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. In such cases, a contradictory order or an order whose specific terms have not been violated will not serve as the basis for a finding of contempt. To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. A person may not be held in contempt of court for failing to obey an order that is too vague or that cannot be enforced.

*In re Contempt of Cullen,* 849 A.2d 1207, 1210–1211 (Pa.Super.2004), *appeal denied,* 582 Pa. 676, 868 A.2d 1201 (2005) (quoting *Lachat, supra* at 488–89) (emphasis added).

¶ 18 In the instant case, the court issued several orders, relevant to the dispute on appeal, on January 30, 2004 and April 7, 2004 respectively. One of the January 30th orders states:

AND NOW, to wit, this 30th day of January, 2004, in regard to Plaintiff's motion *in limine* number six, it is denied in regard to mother's smoking. However, it is granted without prejudice as to her alleged mental conditions. If there is any evidence of the same being presented, the presenting party shall make an offer to the [c]ourt prior to doing so.

(Trial Court Order, dated January 30, 2004; R.R. at 287a). Another January 30th order reads:

AND NOW, to wit, this 30th day of January, 2004, Plaintiff's motion *in limine* number twelve to preclude Elana Kehoe, R.N., from rendering opinions on the issue of causation is granted.

(Trial Court Order, dated January 30, 2004; R.R. at 324a). The relevant April 7th order states:

AND NOW, to wit, this 7th day of April, 2004, Plaintiff's renewed motion *in limine* to exclude smoking is denied. To the extent necessary, the [c]ourt will entertain any motions for cautionary instructions that are appropriate.

(Trial Court Order, dated April 7, 2004; R.R. at 941a).

¶ 19 The events at issue in this appeal occurred on April 12, 2004. During his opening statement, Appellant remarked:

> In the very early stages of gestation, . . . the fetal brain is developing. Hundreds of thousands of neurons are created on an hourly basis, and in that process they have to be positioned correctly in the central nervous system of the fetus. If there is anything that disrupts that channel, that mapping of these neurons to where they go, . . . called neuronal migration or disruption in normal [ ] neuronal migration and that creates microchephaly. Microcephaly by definition is a small head.
>
> Now [counsel] in this case have spoken to you about intrauterine growth restriction, "IUGR." They did not talk to you about further description of what IUGR is or to distinguish between asymmetric IUGR and symmetric IUGR.
>
> Symmetric IUGR means everything about the fetus is small, smaller than normal. That's not the case here. We are talking about asymmetric IUGR in this particular case and what that means is the baby was 5 pounds, some ounces. A small baby but not a IUGR baby under normal circumstances. The baby [here] was asymmetrically IUGR, meaning that the head was significantly, severely, profoundly smaller in proportion to the rest of her body.
>
> That did not develop in the last three weeks of life as the experts you will hear say time and time again. That was a prolonged process.
>
> The chemicals associated with cigarette smoking, carbon monoxide, cyanide, nicotine. Nicotine is an extremely powerful vasoconstrictor. Vasoconstriction meaning a compression, a narrowing of the blood vessels. Nicotine does that.
>
> When a woman becomes pregnant and the embryo begins to grow in the uterus, the baby is nourished, fueled if you will, by the placenta. What goes into the mom, passes through the placenta, to the baby.
>
> Nicotine is a vasoconstrictor. Oxygen is passed through the placenta, life-giving oxygen, as well as all the other nutrients the baby need to live *in utero*.
>
> Nicotine is a powerful vasoconstrictor.
>
> [Opposing counsel's] theory of the case and what he has proposed in his opening statement was this child's IUGR, as he likes to define it, did not occur, was not apparent or did not have anything to do with what has transpired in the events of this pregnancy before three weeks of her delivery; but, in fact, . . . it did and the evidence will establish that through the testimony of a host of extremely well qualified experts. The vasoconstriction, all the other chemicals, the chemical by an ACH chemical causes microcephaly.

(N.T. Trial, 4/12/04, at 112; R.R. 1089a). At that point, Appellees' counsel objected and moved for a mistrial. In fact, all but one of the medical experts competent to discuss causation stated that smoking was a **risk factor** for microcephaly and IUGR. Although one expert stated: "[t]he most likely cause for [Appellee's] growth retardation was her mother's smoking," that statement alone was insufficient to support counsel's opening remarks. (Report of Thomas E. Wiswell, M.D., 11/14/03, at 3; R.R. 537a).[4] Hence, Appellant misstated

---

4. Regarding the comment, "most likely cause," we note:

> In *Menarde v. Philadelphia Transporation Co.*, 376 Pa. 497, 103 A.2d 681 (1954), our Supreme Court held that such an opinion failed to meet the standard of expertness required of a witness. The Court stated at 501, 103 A.2d at 684:

the evidence while emphasizing the significance of the chemicals associated with smoking. Appellant did not have a "host of extremely well-qualified experts" to testify that smoking **caused** the minor plaintiff's microcephaly. The exchange between counsel and the court makes clear Appellant had in mind the proposed testimony of Nurse Kehoe, whose causation testimony the court had already precluded. (N.T. Trial, 4/12/04, at 115–18; R.R. at 1092a–1095a). Later in the discussion, the trial court asked Appellant to identify which one of **Appellees'** own experts might have supplied the necessary testimony. Appellant replied, "I don't know." (N.T. Trial, 4/12/04, at 138; R.R. 1115a). On appeal, Appellant cannot simply rely on his anticipated skilled cross-examination to elicit the necessary testimony from Appellees' own experts. Appellant's untenable opening statements necessitated the mistrial to address the obvious jury taint. *See Young, supra.*

■ ¶ 20 In support of their contempt petition, Appellees referenced an unrecorded teleconference on April 6, 2004, wherein the trial court decided smoking could be admitted only as a risk factor, but not as a cause, of the minor child's alleged birth defects. (Contempt Petition, 4/19/04; R.R. 944a–951a). The contempt petition, however, does not cite to a specific court order. Appellees' allusions to an unrecorded teleconference, and the parties' alleged understandings about the inadmissibility of the evidence at issue, do not constitute a "definite, clear, and specific" order required for civil contempt. *See In re Contempt of Cullen, supra.*

(T)he expert has to testify, **not that the condition of claimant might have, or even probably did,** come from the accident but that in his professional opinion the result in question **came from the cause alleged**. A less direct expression of opinion falls below the required standard

■ ¶ 21 Moreover, the trial court's order directing Appellant to pay sanctions, does not reference a particular prior order. (*See* Findings of Fact and Order, dated June 22, 2004 and entered June 24, 2004; R.R. 1667a–1669a). In anticipation of retrial, however, the court issued the following order on June 7, 2004:

AND NOW, to wit, this 7th day of June, 2004, after consideration of Plaintiff's second renewed motion *in limine* to exclude any and all references to mother's smoking during pregnancy, the [c]ourt grants the [motion] to the following extent: The parties may offer testimony that smoking is a risk factor for diagnosing and treating IUGR and, in that regard, may introduce evidence that the [mother] of the child smoked. However, that is the only evidence that may be entered regarding smoking. Any testimony may not go beyond that boundary. Failure to abide by this directive may result in severe sanctions.

* * *Any testimony regarding smoking beyond that set forth above will be highly prejudicial and based upon the facts of this case will outweigh the probative value of the evidence proffered. *See* [Pa.R.E. 403]. This is particularly true in light of all the evidence and after the comments that have given rise to the mistrial in this case. This [c]ourt is extremely concerned that the Defendants may even inadvertently introduce evidence that is inadmissible or that has been ruled inadmissible or that is inadmissible albeit inadvertently or in the name of

of proof and does not constitute legally competent evidence.
*Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 307 A.2d 449, 456 (1973) (emphasis added) (holding expert's use of phrase "most likely cause" reflected lack of certainty required for expert opinion).

zealous advocacy. The use of the evidence of smoking can be greatly misleading and has been in many respects under the facts presented so far in this case. The parameters set forth above will provide the jury with the probative facts necessary to fairly judge this case. Beyond that, the facts proffered by the parties regarding smoking will be exceedingly misleading and prejudicial.

(Trial Court Order, dated June 7, 2004, at 1–2). While this order informs the parties as to the proper scope of admissible evidence at trial on smoking, it cannot serve as the order of record to support the court's finding of contempt or its order for sanctions, where the contemptuous conduct occurred on April 12, 2004, long before the June 7th order was issued.

¶ 22 In its Rule 1925(a) opinion, the court first relies on its January 30th Nurse Kehoe order. The court's January 30th Nurse Kehoe order was in response to Appellees' motion *in limine* to preclude her opinion on causation. The ground for exclusion was that Nurse Kehoe is not a medical doctor; and, under Pennsylvania law, a nurse is not competent to testify in a medical malpractice case either directly or indirectly on whether deviations in the defendant physician's standard of care are the proximate cause of the patient's alleged harm or injury.[5] Nurse Kehoe was also the only proposed expert who directly linked mother's smoking during pregnancy to the child's injuries. The court, however, precluded Nurse Kehoe's opinion on causation at trial, because she is not a physician. Further, the court did not bar Nurse Kehoe's entire testimony at trial, only her proposed opinion as to causation. Therefore, we conclude the Nurse Kehoe order

is not dispositive of the issue before us on appeal; it is simply insufficient on its face to serve as the record basis for the court's later contempt/sanctions order.

¶ 23 The court also relies on its April 7th order, denying Appellees' renewed motion *in limine* to exclude evidence at trial of mother's smoking during pregnancy. Although the court references in its opinion the many "discussions and pretrial motions" concerning mother's smoking and its effect on liability, the April 7th order actually **denies** Appellees' motion *in limine*. That the court would also entertain appropriate cautionary instructions does not illuminate our analysis. What we are looking for in this record is a definite, clear, specific order precluding the causation evidence at issue, something in the nature and form of the court's later "clarification" order of June 7, 2004. Thus, we conclude the court's orders of January 30th and April 7th are simply too vague to serve as a proper foundation for the contempt/sanctions order on appeal.

¶ 24 Finally, we reject Appellees' reliance on 42 Pa.C.S.A § 4132 to authorize sanctions upon a willful violation of a court order because, once again, Appellees do not direct our attention to a specific order in the record. Moreover, this Court has held that Section 4132 applies "when a party is in direct **criminal** contempt of court; that is when a party engages in misconduct in the presence of the court with the intent to obstruct the judicial proceeding which actually obstructs the administration of justice." *Sinaiko v. Sinaiko*, 445 Pa.Super. 56, 664 A.2d 1005, 1014 (1995) (emphasis added). In *Sinaiko*, this Court refused to apply Section 4132 to civil contempt. *Id.*

5. *See, e.g., Flanagan v. Labe,* 446 Pa.Super. 107, 666 A.2d 333 (1995), *affirmed,* 547 Pa. 254, 690 A.2d 183 (1997).

¶ 25 We definitely do not condone Appellant's trial strategy in misstating the evidence, even under the *aegis* of an aggressive defense. Nevertheless, we hold the court's ruling subject to review has no foundation of record, absent a definite, clear, and specific prior order of record prohibiting the use at trial of evidence of mother's smoking during pregnancy as a cause of the minor child's alleged birth defects. Thus, we are constrained to reverse.

¶ 26 Order reversed; case remanded. Jurisdiction is relinquished.