J-S78001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.L.G., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| M.S.P., | |
| Appellee | No. 1309 MDA 2014 |

Appeal from the Orders entered July 30, 2014,
in the Court of Common Pleas of Columbia County,
Civil Division, at No(s): 175 of 2003

BEFORE:  GANTMAN, P.J., JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED FEBRUARY 19, 2015**

J.L.G. ("Mother") appeals from two Orders entered on July 30, 2014, one of which granted M.S.P.'s ("Father's") Petition to modify custody of the parties' son, B.G. ("Child"), born in March of 2002 ("the Custody Order"), and the other of which granted Father's Petition to find Mother in contempt ("the Contempt Order").  We affirm.

The trial court set forth its findings of fact and the procedural history of the case in its Opinion.  *See* Trial Court Opinion, 7/30/14, at 1-5.  We adopt the trial court's recitation for the purpose of this appeal.  *See id*.

Relevant to this appeal, the custody of Child was established in an Order entered in April 2008 (the "2008 Custody Order"), which awarded Mother primary physical custody of Child throughout the school year, and awarded Father partial physical custody of Child during the summer and at

the Christmas holiday.[1]  On June 11, 2013, Mother, acting *pro se*, filed a Petition to modify the 2008 Custody Order to reduce Father's summertime partial custody to two weeks, so that Child could participate in baseball, football, and other sports.  The trial court appointed a special master, who held a custody conference in which both parties participated.  On July 29, 2013, the special master filed his Recommendations, recommending that (1) the provisions of the 2008 Custody Order remain in effect; (2) that Mother purchase an airline ticket for Child to travel to Father's home for the remainder of the summer; (3) that Father reimburse Mother for part of the cost of the ticket; and (4) that Mother contribute to future travel costs for Child to see Father.  On July 29, 2013, the trial court approved the special master's Recommendations as an interim Order.

On August 12, 2013, Mother filed Exceptions to the Recommendations on the basis that (1) Father had not reimbursed her for half of the cost of the replacement airline ticket; (2) she should not have to contribute to future travel costs for Child to see Father because she had voluntarily agreed to a reduction of Father's child support payments; and (3) unless Father's summertime custody was shortened, Child would miss football equipment handouts and the beginning of football practice.

---

[1] Pursuant to the 2008 Custody Order, Father was awarded partial physical summertime custody of Child, commencing the second Saturday after Child's school concludes, and continuing until one full week before Child's school resumes in the Fall.

On January 6, 2014, Father filed a Petition to modify custody, seeking primary physical custody of Child, and a Petition for contempt against Mother with regard to her interference with his Summer 2013 partial custody of Child.

After holding a conference with the parties, the trial court issued an interim custody Order on May 9, 2014. On July 28, 2014, the trial court held a hearing on Mother's Exceptions, Father's Petition to modify custody, and Father's Petition for contempt of Mother. On July 30, 2014, the trial court entered an Opinion and three separate Orders: an Order denying Mother's Exceptions to the special master's Recommendations; the Custody Order, which awarded Father primary physical custody of Child during the school year, and Mother partial physical custody during the summer and Christmas breaks; and the Contempt Order, which found Mother in contempt of the 2008 Custody Order concerning Father's custody time in the summer of 2013, and directing Mother to pay Father $418 toward his lost plane fare for Child.

On August 5, 2014, Mother filed a Notice of Appeal, challenging the Custody Order and the Contempt Order, and a Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises the following issues:

A. [Whether] the trial court erred as a matter of law and/or abused its discretion in finding that [] [C]hild was undereducated and grossly underachieving in school, as the record is devoid of any specific evidence or testimony [that

C]hild is undereducated or grossly [under]achieving in school[?]

B. [Whether] the trial court erred as a matter of law and/or abused its discretion in finding that the custody factors under 23 Pa.C.S.A. § 5328(a), specifically factors 1, 4, 5, 6, 7, 8, 10, and 13, are in favor of Father, when the evidence and testimony of record do not support such a conclusion[?]

C. [Whether] the trial court erred as a matter of law and/or abused its discretion in finding that Mother was in contempt of the court's [April 28, 2008 Custody Order?]

Mother's Brief at 5 (capitalization omitted).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

With any custody case decided under the Child Custody Act ("the

Act"), 23 Pa.C.S.A. §§ 5321 to 5340, the paramount concern is the best

interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338.[2] Section 5338 of

the Act provides that, upon petition, a trial court may modify a custody

order if it serves the best interests of the child. ***See*** 23 Pa.C.S.A.

§ 5338. Section 5328(a) of the Act sets forth the best interests factors that

the trial court must consider. ***See*** 23 Pa.C.S.A. § 5328(a); ***see also E.D. v.***

***M.P.***, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

**(a) Types of award**.—After considering the factors set forth in
section 5328 (relating to factors to consider when awarding
custody), the court may award any of the following types of
custody if it in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

---

[2] As the custody trial in this matter was held in July of 2014, the Act is
applicable. ***C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (holding
that, if the custody evidentiary proceeding commences on or after the
effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act
apply).

J-S78001-14

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

Section 5328 of the Act enumerates sixteen factors that a trial court must consider before awarding any form of custody:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the Child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

- 6 -

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[3]

In her brief, Mother contends that the trial court erred by finding that Child was "grossly underachieving" in school and was "undereducated," asserting that these findings are unreasonable and unsupported by the record. Mother's Brief at 11. Mother asserts that, because Father filed the

---

[3] Effective January 1, 2014, the Act was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Although this subsection was applicable at the time of the custody trial in the present matter, the trial court found that there was no credible evidence of any abuse, and, thus, there was no evidence that would have required the court's further consideration of this factor. *See* Trial Court Opinion, 7/30/14, at 6.

Petition to modify custody, it was his burden to demonstrate that it was in Child's best interest to modify the existing custody arrangement. *Id*. Mother contends that Father's production of Child's report cards, and Child's acknowledgment that he could perform better in school, does not suffice to meet Father's burden. *Id*. at 12-13. While Mother acknowledges that Child may be "underachieving somewhat," she disputes the trial court's determination that he is "grossly underachieving." *Id*. at 13. Mother points out that Child's report card shows him to be an average student, and contends that there is no evidence that he is capable of achieving anything better than a "C" in his classes. *Id*.

Mother also disputes the trial court's determination that Child is "undereducated," claiming that there is no evidence in the record that the Bloomsburg School District is not an appropriate school district, or that the Tahoma School District is a better or more appropriate school district for Child. *Id*. at 14. Mother asserts that Child receives assistance from Mother and her wife with his school work, and attends tutoring after school. *Id*.

Here, Mother challenges factual determinations made by the trial court. As noted previously, our role does not include making independent factual determinations, and we must accept the findings of the trial court that are supported by competent evidence of record. *See C.R.F.*, 45 A.3d at 443. Our review of the record discloses that Child's grades at the time of the custody hearing included a 65, 69, 70 and 75, with a final grade point

average of 74.8, and that he had not been turning in his homework or making a consistent effort in school. *See* N.T., 7/28/14, at 13-14, 33. Father, Mother and Child each acknowledged that Child is underperforming. *See id*. at 9, 34 (wherein Child acknowledged that he is underperforming, but indicated that when the custody dispute is over, he will "definitely" be able to do better in school); *id*. at 49-50 (wherein Father testified that Child's grades for the last several years have been "low average or just barely passing"); *id*. at 151 (wherein Mother acknowledged that Child could "absolutely" do better that a 74 grade point average). Additionally, following an *in camera* interview of Child, the trial court found Child to be "smart," "witty" and "sharp." *See id*. at 9, 13, 37; *see also* Trial Court Opinion, 7/30/14, at 4 ¶¶ 10, 11 (wherein the trial court observed that Child is "very articulate and mentally quick and very insightful[,]" and noted that he "speaks in a language that seems much older than his age and emotional maturity.").

Because our review of the record reveals that the trial court's determination that Child was underperforming in school, while enrolled in the Bloomsburg School District, is supported by competent evidence, we will

not disturb such determination on appeal.[4]

In her second issue, Mother contends that the trial court's findings with regard to the custody factors under 23 Pa.C.S.A. § 5328(a) constitute "mere conclusions without any analysis," and are not supported by the record. Mother's Brief at 16. Specifically, Mother asserts that the trial court erred in finding that factors 1, 4, 5, 6, 7, 8, 10, and 13 favored Father, when the evidence and testimony of record do not support such a conclusion. *Id*. at 17-27. While Mother concedes that the trial court addressed each of the 5328(a) factors in its Opinion, she claims that its custody determination must be reversed because it did not provide sufficient factual analysis of each factor. *Id*. at 28.

The Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors. *See* 23 Pa.C.S.A. §§ 5323(d), 5328(a); *see also M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013).

---

[4] Mother also points out that Child's social and educational abilities were not observed or evaluated by a psychologist. Mother's Brief at 11. Mother claims that, despite Father's evidentiary burden, he failed to produce any of Child's standardized test results, or present Child's guidance counselor and teachers, who could have opined as to Child's educational abilities and/or limitations, and whether Child was working to his potential. *Id*. at 11-12. We conclude that this argument lacks merit, as all parties, including Mother, agreed that Child was underperforming. Moreover, the question of whether Child was underperforming was not so complex an issue that it was beyond the knowledge, intelligence, and experience of the ordinary layman so as to necessitate expert opinion testimony. *See Commonwealth v. Begley*, (stating that "[t]he purpose of expert testimony is to assist the factfinder in grasping complex issues not within the knowledge, intelligence, and experience of the ordinary layman.").

Contrary to Mother's argument, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M.**, 63 A.3d at 336.

In its Opinion, the trial court set forth the factors enumerated in section 5328(a), explained how it weighed each factor, and then discussed the reasons that guided its decision regarding Child's custody. **See** Trial Court Opinion, 7/28/14, at 6-9. After a careful review of the entire record, we find competent evidence to support the trial court's factual findings regarding the statutory factors challenged by Mother. Accordingly, we will not disturb them, and affirm as to this issue based on the trial court's rationale. **See id**.

In her third issue, Mother challenges the Contempt Order, asserting that the evidence of record does not establish that she willfully violated the 2008 Custody Order. Mother's Brief at 29. Rather, Mother contends, the evidence shows that Child refused to go to the State of Washington for the start of his 2013 summer vacation with Father because he overheard Mother's wife indicate that they were going to the beach, and he did not want to "miss out." **Id**. Mother claims that Child locked himself in his bedroom and refused to come out until after the plane had departed. **Id**.

When considering an appeal from an order holding a party in contempt for failure to comply with a trial court order, our scope of review is narrow:

we will reverse only upon a showing that the court abused its discretion. *See Habjan v. Habjan*, 73 A.3d 630, 637 (Pa. Super. 2013). The trial court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. *See Hopkins v. Byes*, 954 A.2d 654, 655 (Pa. Super. 2008). This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. *See G.A. v. D.L.*, 72 A.3d 264, 269 (Pa. Super. 2013) (stating that "each court is the exclusive judge of contempts against its process.").

To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order which was allegedly disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *See Stahl v. Redcay*, 897 A.2d 478, 489 (Pa. Super. 2006).

In the instant case, Mother does not contend that she was unaware of the 2008 Custody Order or that her noncompliance was not volitional. Rather, she contends that she lacked wrongful intent. Nevertheless, the trial court found as follows:

> In the summer of 2013, Mother denied Father his summer custody with [Child], essentially saying that [Child] did not want to go for various reasons, including not wanting to miss football practice. In fact, Mother had arranged a beach trip for herself and others with [Child], causing him to balk at the Washington visit. It was ordered that [Child] go to Washington to visit []

[F]ather. The visit was 2½ weeks instead of the 6-7 weeks that it would have been.

Trial Court Opinion, 7/30/14, at 3, ¶ 7.

The trial court explained the reasons for finding Mother in civil contempt of the 2008 Custody Order:

There was clearly, at least, circumstantial evidence that [] [M]other kept [Child] from [F]ather's partial custody times. Clearly, she was not able to control her 11-12 year [old] son and get him out the door and on the way to [] [F]ather's [home]. When he got to [] [F]ather's place, he enjoyed his time.

Trial Court Opinion, 8/11/14, at 2.

Based on our review of the record, we cannot conclude that the trial court abused its discretion, misapplied the law, or exercised its discretion in a manner lacking reason. Therefore, we affirm the trial court's Contempt Order.

Orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2015

JENNIFER L. GUISE,

               Plaintiff

vs

MICHAEL S. PARSON,

               Defendant

IN THE COURT OF COMMON
PLEAS FOR THE 26TH JUDICIAL
DISTRICT, COLUMBIA COUNTY
BRANCH, PENNSYLVANIA
CIVIL ACTION - CUSTODY

CASE NO: 175 of 2003

APPEARANCES:
GREGARY T. MORO, ESQUIRE, Attorney for Plaintiff
NOAH NAPARSTECK , ESQUIRE, Attorney for Defendant

IN BOXES (KD)
7/30/14 11:15 a.m.

July 28, 2014. JAMES, J.

CLERK OF COURTS OFFICE
COUNTY OF COLUMBIA, PA
2014 JUL 30 A 11: 15
FILED PROTHONOTARY

**OPINION PURSUANT TO R.C.APP.P. 1925(a)**

("Child")

This is a custody case involving one minor child █████ born March 13, 2002. Defendant (Father) filed a Modification Petition. Plaintiff (Mother) had filed Exception to a Special Master's report. She was excepting to transportation costs and wishes to alter Father's summer custody schedule. Father had also filed a contempt petition. All three matters were heard by this court at the same hearing. Mother's Exceptions and Father's contempt petition are being addressed in separate orders. In this modification petition, Father is seeking primary physical custody.

1

36

A hearing was held on all issues on July 28, 2014. Plaintiff Mother testified on her own behalf. She called the following witnesses: her spouse, ~~_____~~ ("Mother's spouse"). ~~_____~~ The ex-spouse *of Mother's spouse* was presented through a stipulated offer of proof Defendant Father testified on his own behalf. He called the following witnesses: his wife ~~_____~~ ("Father's wife" or "A.P.") and his parents, ~~_____~~ ("V.P.") and ~~_____~~ "E.P." Amy Parson's mother was presented through a stipulated offer of proof. ~~_____~~ Child ~~_____~~ testified. Each party offered numerous exhibits.

## FINDINGS OF FACT

The court finds that the following facts have been proven:

1. Plaintiff ("Mother") ~~_____~~ resides in Bloomsburg, Columbia County, Pennsylvania. She lives in a residential area in one-half of a duplex. The home is clean and decent, with three bedrooms. She lives there with her spouse of three years, ~~_____~~ and ~~_____~~ her spouse's 16 year old daughter ~~_____~~ ("C") and with ~~_____~~ Child. The children have their own rooms. It is a clearly sufficient home for the children. She is age 35 and in good health. She has worked as a State Prison corrections officer for 7 years, 10-p.m. to 6:00 a.m. on a rotating schedule. Mother's spouse ~~_____~~ is an on-line student and supervises the children when Mother works. Mother's spouse ~~_____~~ and Mother have been together for 16 years, except for about 2 years when Mother was in the service

2. Defendant ("Father") ~~_____~~, age 32, who resides in Maple Valley, Washington, which is located near Seattle, Washington. He and his wife own the home which is located in a rural area and is clearly sufficient for the child. Father works for a family owned company as a truck dispatcher. He recently completed a bachelor's degree in American Studies. His working hours are 7 a.m. to 3:30 p.m. He lives with his wife, ~~_____~~ A.P., age 35, whom he married in 2004. ~~_____~~ A.P. has been a kindergarten teacher for

2

over 9 years. She has a master's degree and is ELS certified.

3. The parties were never married. Father is from Pittsburgh and Mother is from Bloomsburg. They met while in the military service in Washington State. When Mother got pregnant, she received a medical discharge and moved back to Bloomsburg. Father was shortly thereafter deployed to Iraq for a year. When he returned home, he received an honorable discharge but stayed in Washington where he married ▇ and bought a house.

4. The parties are the parents of ▇ Child, ▇ ▇ born March 13, 2002. After ▇ was born and Father returned from Iraq, ▇ spent about 5 months in Washington (or the Pittsburgh area – paternal grandparents' home) with Father and the rest of the time with Mother. When ▇ started school, Father essentially had custody in the summer and at Christmas.

5. Paternal grandparents have been very active in ▇ life helping with logistics and have had significant contact with ▇, particularly during the Iraq years and at Christmases. Father's wife's family is largely in Washington and provides a good support system.

6. Mother is estranged from her parents.

7. In the summer of 2013, Mother denied Father his summer custody with ▇, essentially saying that ▇ did not want to go for various reasons, including not wanting to miss football practice. In fact, Mother had arranged a beach trip for herself and others with ▇, causing him to balk at the Washington visit. It was ordered that ▇ go to Washington to visit his Father. The visit was 2½ weeks instead of the 6-7 weeks that it would have been. A separate order has found her to be in contempt of court for her actions.

8. ▇ is entering the seventh grade. In Washington, ▇ would attend the Tahoma schools (▇ alma mater), 1 ½ miles from their house. In Bloomsburg, he would attend Bloomsburg schools, also about 1 ½ miles from his Mother's house.

3

9. There is a question about *Child's* supervision and judgment in Mother's house and *Child's* relationship with a 14 year old girl.

10. In Bloomsburg, *Child* has been a poor student, barely passing his main courses. It appears to this court that he is grossly underachieving. He is very articulate and mentally quick and insightful. He acknowledges that he does not try hard enough but suggests that the custody issues are very distracting.

11. *Child* speaks in language that seems much older than his age and emotional maturity.

12. *Child* says specifically in regard to the custody bickering, "I just want this to stop." He has kind words for both parents and their families. He would like it best if they all lived closer together.

13. Each party seeks primary physical custody.

14. *Child* was in the Central Columbia School District until fourth grade. He has been in the Bloomsburg schools now (entering 7th grade), and may be in Pittsburgh in a couple of years.

15. Father is active with the child when *Child* is with him.

16. Mother has spoken to *Child* too much about this custody case.

17. Both parties' significant others are sources of stability. *Mother's spouse* has attempted to facilitate custody contacts, although she is supportive of Mother's position. *A.P.* is a school teacher and supportive of Father. *A.P.* has and can attend to *Child's* educational deficiencies.

18. Mother and Father do not communicate well. It is a real concern. Mother is, passively aggressively, more of a problem with communication deficits. These parents should go to counseling themselves, bury their animosities, and start communicating for the sake of this child before it is too late.

19. *Child* needs counseling (as most children do in these situations!).

4

20. Child needs tutoring and more educational structure.

21. Both parties have the best interests of the child at heart.

## DISCUSSION

The paramount consideration of any child custody proceeding is what is in the best interest and welfare of the child, which includes preserving the welfare of the child's physical, intellectual, and spiritual well being. Cardamone V. Elshoff, 442 Pa.Super. 263, 659 A.2d 575 (1995). The court will consider all relevant factors that could affect a child's well being. Andrews v. Andrews, 411 Pa.Super. 286, 289, 601 A.2d 352, 353 (1991).

The legislature has given some guidelines for determining what custody arrangement is in the best interest of the children. 23 Pa.C.S. § 5303(a) provides the "general rule":

(1) In making an order for custody or partial custody, the court shall consider the preference of the child as well as any other factor that legitimately impacts the child's physical, intellectual and emotional well being.

(2) In making an order for custody, partial custody or visitation to either parent, the court shall consider, among other factors, which parent is more likely to encourage, permit and allow frequent and continuing contact and physical access between the noncustodial parent and the child.

(3) The court shall consider each parent and household member's present and past violent or abusive conduct that may include, but is not limited to, abusive conduct as defined under the act of October 7, 1976

5

(P.L. 1090, No. 218), known as the Protection From Abuse Act.

The legislature has also set for specific consideration and factors to take into consideration in making custody determinations:

23 Pa.C.S.A. § **5328. Factors to consider when awarding custody**

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party. **(Here, the court finds that Father is more likely to cooperate and give more custody time.)**

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child. **(There is no credible evidence of abuse. Any implication of abuse was fabricated.)**

(3) The parental duties performed by each party on behalf of the child. **(Both parties have performed parental duties on behalf of the child.)**

(4) The need for stability and continuity in the child's education, family life and community life. **(Father's ability to provide a stable family life and stable education for the child is superior to Mother's ability.)**

(5) The availability of extended family. **(Father's family is particularly involved and available.)**

(6) The child's sibling relationships. **(The minor child has a decent relationship with his step-sister, C.** ████ **However, they attend different schools and have significantly different social lives.  With the ordered schedule, their bond should continue and should not be weakened.)**

(7) The well-reasoned preference of the child, based on the child's maturity and judgment. **(The child has not expressed a *mature* judgment or preference, except that he wanted the families closer to each other and wanted to attend Bloomsburg schools. However, there is no guarantee that he will continue to attend Bloomsburg schools.)**

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm. **(Mother has at least passively attempted to alienate the child by trying to limit contact.)**

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. **(Both parties are good, interested, and nurturing parents, except to the extent that their lack of communication negatively impacts the child.)**

10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. **(Both parties are capable, although Father has the superior ability in this category.)**

(11) The proximity of the residences of the parties. **(This is the most difficult aspect of this case, as recognized by the minor child.  The distance between the parties was not occasioned by either party**

7

to thwart the custody rights of the other.)

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements. **(Both parties have this capability.)**

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party. **(The parties do not communicate. But the Father has the edge in that Mother puts up more barriers to communication.)**

(14) The history of drug or alcohol abuse of a party or member of a party's household. **(No evidence on this issue.)**

(15) The mental and physical condition of a party or member of a party's household. **(The parties' significant others are stable and reasonable.)**

(16) Any other relevant factor.

**(b) Gender neutral.**--In making a determination under subsection (a), no party shall receive preference based upon gender in any award granted under this chapter. **(This decision is being made on a gender neutral basis.)**

After consideration of all of the relevant factors, the court finds that the best interests of the minor child would be served by Father having primary physical custody of the minor child, with Mother to have custody almost all summer, Christmas vacation, and other times that she is available. There are several significant reasons that guide this decision. First, particularly with the distance, Father will more likely allow

8

and encourage Mother to have more often and continuing contact. Mother would tend to try to alienate the child's affections for his Father. Second and very importantly, the minor child is woefully underachieving in school. Father, along with his wife, will aggressively attend to the child's educational needs and help him to achieve his potential. If he stays where he has been during the school year, he will likely become undereducated. (All the time spent on video and computer games is not helpful.)

Third, there is real concern for the supervision of the minor child. His relationship or potential relationship with a 14 year old girl is troublesome. This is particularly true in light of the minor child's mature language and still very young age. He talks like a much older teen, while showing no signs of similar emotional maturity.

The distance between the parties is a major obstacle, but there is no solution except to grant off school time to Mother and school time to Father. Thus, the following order.


BY THE COURT:


_____
HONORABLE THOMAS A. JAMES, JR., J.

9