J-A22018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| JOHN MASTRONARDO | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| MARY ANGELA MASTRONARDO | : | No. 377 EDA 2017 | |

Appeal from the Order Entered December 22, 2016
In the Court of Common Pleas of Montgomery County Domestic Relations
at No(s):  2011-12245,
2011-12245

BEFORE:   BOWES, J., LAZARUS, J., and PLATT*, J.

CONCURRING AND DISSENTING MEMORANDUM BY BOWES, J.:

**FILED JANUARY 22, 2018**

While I concur with the majority's decision to affirm the portion of the trial court order that denied Husband's counter petition for contempt, I do not believe that the certified record supports the trial court's finding of contempt against Husband or the imposition of sanctions.  Thus, I dissent from that aspect of the majority memorandum.

At the outset, I note my agreement with my learned colleagues' conclusion that the trial court did not err in denying Husband's counter petition for contempt.  However, the majority's analysis is incomplete insofar as it only confronts the component of Husband's petition that relates to Wife's accumulation of credit card debt.  It neglects to address Husband's remaining claim that Wife surreptitiously liquidated two investment accounts

_____
*   Retired Senior Judge assigned to the Superior Court.

worth over $100,000 in marital assets. Nevertheless, my review of the certified record supports the trial court's decision in this regard.

First, the record confirms that Wife disclosed the existence of one of the accounts to Husband during the divorce proceedings. *See* N.T., 12/13/16, at 116-117. Hence, that allegation of misfeasance is baseless. The remaining claim is equally unconvincing in that the certified record supports the trial court's credibility determination in favor of Wife. Specifically, Wife testified that she was unaware of the Jefferson Pilot investment account and had no recollection of its alleged liquidation during 2010, while the marriage remained intact. The trial court credited this testimony, noting that the registered representative for the account was Husband's business associate, Henry Nemanich, who subsequently lost his broker's license for misappropriating client funds. I find no basis to disturb this aspect of the court's credibility determination. Husband not only conceded that the Jefferson Pilot account was liquidated before he initiated the divorce proceedings, but he also confirmed that he has maintained a business relationship with Mr. Nemanich, despite his sullied reputation and unexplained role, as the account representative, in Wife's alleged misappropriation of marital funds. Accordingly, I concur with the majority's decision to affirm the portion of the trial court order that denied Husband's counter petition for contempt.

I depart from my colleagues in relation to the remaining aspects of the majority memorandum. Specifically, assuming that Husband technically

violated the terms of the property settlement agreement ("PSA") between Wife and him by mortgaging the Boca Raton Condominium that was held in trust for and their adult children without obtaining "prior consent," I believe the transgression was *de minimis* in light of the fact that the beneficiaries clearly sanctioned the move and Wife suffered no harm.[1]  Furthermore, I believe that the court overstepped its authority by imposing sanctions that modified the PSA in direct contravention of the agreement.[2]  Finally, notwithstanding the majority's protestations to the contrary, it is clear from my perspective that Husband's subjective beliefs are, in fact, relevant to the issue of wrongful intent, which is an element of civil contempt.  I address the foregoing positions *seriatim*, and for the reasons explained *infra*, I dissent from the portion of the memorandum that affirms the trial court's finding of contempt, unilaterally modifies the PSA, and awards Wife counsel fees.

The majority summarized the relevant facts and procedural history, and it outlined our standard of review.  I will not revisit those items beyond highlighting the fact that Husband provided Wife with proof of the adult

---

[1] Under the terms of the mortgage secured by the Boca Raton Condominium, the loan was $375,000; however, the lender could agree to future advances up to $750,000.

[2] The trial court prohibited Husband from encumbering the property with the beneficiaries' permission, required Husband to obtain two life insurance policy's identifying the children as beneficiaries, and awarded Wife $8,810 in attorney's fees.

beneficiaries' ratification of the mortgage less than four months after he executed it, and not, as the majority claims, over one year later. *See* Majority Memorandum at 4. Thus, to the extent that the majority's decision is based upon the purported "one year" delay, the clarification undermines that conclusion. *Id*.

I also observe that, in affirming the trial court's finding of contempt, the majority neglected to identify the elements of civil contempt. I outline those components as follows:

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Stahl v. Redcay*, 897 A.2d 478, 489 (Pa.Super. 2006).

*Habjan v. Habjan*, 73 A.3d 630, 637 (Pa.Super. 2012).

Having addressed these preliminary matters, I confront the merits of Wife's contempt petition. As referenced *supra*, during the equitable distribution process, Husband and Wife executed a PSA, which discussed, *inter alia*, the Florida condominium that was held in trust for the benefit of their two adult children. In pertinent part, the PSA provided as follows:

4. Florida Condo

. . . .

(d) The parties agree that the condo shall remain in trust for the parties' children, Maria and John, according to the terms of the Trust Agreement, and that the property shall not be encumbered, mortgaged or sold unless both children agree and

in accordance with the terms of the Trust Agreement. The parties' children, Maria and John, shall have access to, and the enjoyment of, the Property.

Property Settlement Agreement, 3/12/13, at 2. I highlight that the specific terms of the accord permit the Florida condominium to be encumbered by a mortgage so long as both of the adult beneficiaries approve the maneuver. That is what occurred herein.

Both the trial court and the majority are preoccupied with determining whether Husband obtained the beneficiaries' consent prior to executing the mortgage. Indeed, the majority dedicates a significant portion of its memorandum to upholding the trial court's interpretation of the contract language. While I agree that the phrase "unless both children agree" frames a condition precedent, I believe that the dispositive question is not whether Husband obtained his children's consent before executing the mortgage, but rather, whether the beneficiaries condoned the decision. As the beneficiaries expressly ratified Husband's action on June 9, 2016, I would find their subsequent approval sufficient.

To the extent that the majority seeks to diminish the significance of the beneficiaries' ratification by implying that it is unreliable because it was not authenticated, that issue is a red herring. It is clear from the certified record that **Wife** introduced the evidence of her children's endorsement of the mortgage by reciting the substance of their approval on the record verbatim during the contempt hearing. ***See*** N.T., 13/13/16, at 25.

Husband did not object to the writing's authenticity and the trial court did not bar the evidence *sua sponte*. Hence, regardless of the majority's intimation, the evidence demonstrating the beneficiaries' approval is unassailable on authenticity grounds at this juncture. ***See Folger ex rel. Folger v. Dugan***, 876 A.2d 1049 (Pa.Super. 2005) (challenge to admissibility based upon improper authentication is waived where party failed to object on that basis during trial). While the majority may find the lack of authentication off-putting, as a practical matter, that issue is a nonstarter.

Instantly, Husband's failure to obtain prior consent is insignificant. To be clear, Wife has **no** interest in the Boca Raton Condominium and the adult beneficiaries whose interest the trust is designed to protect expressly **ratified** the measure. Moreover, there is no evidence that Husband obtained the approval by fraud or deception, and the mortgage does not affect the beneficiaries' use or enjoyment of the property in violation of the PSA. In fact, having been given proof of the ratification at the outset of this litigation, I believe that Wife's relentless pursuit of contempt was a waste of judicial resources.

The gravamen of Wife's petition is her overarching concern for the interest of her adult children. During the hearing, she framed her apprehensions as follows:

> My concern is that when we placed this in trust for our children, that they would have access to it and as something they could

split between the two of them in the event that he passed away and that they would have a financial basis later in their life. And that was when we signed our divorce, I accepted that he would take that and do what he signed to do, that **he would not encumber or mortgage without their consent and leave that to them**. He's encumbering it now by living in it, which I accept. I know that he needed a place to live. And I just don't want them to have to be responsible, in the event that something happens to him, for this mortgage that he's using to live his life off of and make them responsible for it, you know, paying off it, if he in fact would eventually take the balance that he is allowed to do through this mortgage and have them have to satisfy that later. That wasn't the intention, ever.

N.T., 12/13/16, at 27 (emphasis added).

While Wife had an interest in securing Husband's compliance with the PSA, the purported violation of the agreement due to Husband's failure to obtain consent prior to executing the mortgage is harmless. There are no injured parties and no actual damages. Again, I stress that the individuals who the PSA provision was drafted to protect, the adult beneficiaries, ratified the encumbrance. Accordingly, I believe that the technical infringement of the PSA is inconsequential, and the trial court's imposition of sanctions is an overreaction to what is a fundamentally unimportant transgression.

Wife's argument essentially criticizes her adult children's decision to approve the encumbrance. Rather than permit the adult beneficiaries to make decisions on their own, Wife intervened by filing the petition for contempt and, with the trial court's imprimatur, she overstepped the bounds of the PSA. The beneficiaries are competent adults who could have denied their assent outright or conditioned approval on some additional

requirements such as a surety or guaranty. They did neither. It is not for the trial court to rewrite the PSA on Wife's behalf simply so that she can quell her misgivings and minimize the effect of the adult beneficiaries' decisions.

Furthermore, mindful that the beneficiaries validated the mortgage, I believe that the trial court erred in prohibiting Husband from further encumbering the property with his children's consent in the future and by requiring him to purchase and maintain two life insurance policies to protect against default if he died. In condoning the trial court's unilateral modification of the PSA, the majority relied upon two overlapping sections of the Divorce Code, 23 Pa.C.S. § 3105 and 23 Pa.C.S. § 3502(e). Section 3105 authorized the trial court to enforce the PSA as if it were a court order. Likewise, § 3502(e), relating to equitable distribution, empowered the court to employ a litany of measures to "effect compliance" with the terms of the PSA. As the majority recites both statutes at length, I do not reproduce them herein. It is sufficient to say that the trial court's power is not absolute.

Chiefly, it is obvious that the PSA, which is the principal source of the trial court's authority, did not authorize the court to modify the terms of the accord. In pertinent part, the PSA provides as follows:

1. Incorporation of Agreement in Divorce Decree.

. . . .

(b) Further, the parties specifically stipulate that this Agreement shall be incorporated, but not merged into any such judgment for divorce, either directly or by reference. The Court on entry of the judgment for divorce shall retain the right to enforce the provisions and the terms of this Agreement, **but not to modify it**.

Property Settlement Agreement, 3/12/13, at 1. Likewise, the portion of the Divorce Code that empowered the trial court to enforce the PSA limited the court's enforcement authority to items that did not conflict with the written agreement, *i.e.*, "except as provided to the contrary in the agreement." 23 Pa.C.S. § 3105. Similarly, the court's enforcement powers that are enumerated in § 3502(e) do not include the authority to modify an agreement single-handedly.

From my perspective, the trial court exceed its authority in modifying the PSA. While it is beyond argument that the trial court had the power to enforce the PSA, it is equally obvious that the court lacked the authority to modify the agreement on its own. The court's influence over the PSA was restrained by both: (1) the express terms of the accord; and (2) the authorizing statute's explicit recognition that those provisions were inferior to the agreement. As the foregoing makes clear, the trial court's enforcement authority under § 3105 and § 3502(e) was not unrestrained. The PSA permitted the Florida condo to be encumbered with the beneficiaries' approval and it did not require the purchase of additional life insurance policies. Thus, in contrast to the majority, I believe that the trial court exceeded its authority by modifying the PSA to prevent Husband from

seeking future encumbrances and by requiring him to secure two life insurance policies naming the children as beneficiaries.

Finally, I disagree with the majority's holding that the trial court did not err in preventing Husband from adducing evidence regarding his intent, *i.e.*, his belief that the beneficiaries' ratification of the maneuver was sufficient. Specifically, Husband sought to introduce evidence of his conversations about the mortgage with the beneficiaries and the trustee. Although Husband asserted that the out-of-court statements were proffered to establish his subjective state of mind regarding his compliance with the PSA, rather than the truth of the matters asserted, *i.e.*, non-hearsay, the trial court sustained Wife's hearsay objection. Likewise, concluding that Husband's subjective beliefs were irrelevant to the issue of contempt, the majority sanctioned the court's decision.

As the comments to Pa.R.E. 801 demonstrate, "A statement is hearsay only if it is offered to prove the truth of the matter asserted in the statement." Indeed, "[t]here are many situations in which evidence of a statement is offered for a purpose other than to prove the truth of the matter asserted." **Id**. Thus, since Husband sought to adduce the out-of-court conversations with his children and the trustee in order to establish his state of mind when he obtained the mortgage, rather than to prove the truth of what the respective declarants said, his characterization of the proposed

evidence as non-hearsay is accurate.[3]   Moreover, notwithstanding the majority's protestations to the contrary, it is a well-ensconced principle of law that Husband's subjective belief was relevant insofar as it implicated Wife's burden to establish his wrongful intent by a preponderance of the evidence.  **See Habjan**, **supra** at 637.   Thus, mindful of the elements of civil contempt, I would conclude that the trial court abused its discretion in prohibiting Husband from proffering the non-hearsay evidence that tended to disprove his wrongful intent.

For all of the foregoing reasons, I would reverse the portion of the trial court order that (1) granted Wife's petition for contempt; (2) modified the terms of the PSA; and (3) awarded Wife $8,810.00 in attorney's fees. However, I concur with my colleagues' decision to affirm the portion of the trial court order that denied Husband's counter petition for contempt.

---

[3] Significantly, Husband did not offer the children's statements to establish that they validated his actions.  Wife had previously established that fact when she read the substance of the written consent on the record verbatim during the contempt hearing.  **See** N.T., 13/13/16, at 25.