J-S35036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.C. BOWMAN, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD C. BOWMAN, III | : | |
| | : | |
| Appellant | : | No. 798 MDA 2021 |

Appeal from the Order Entered May 21, 2021
In the Court of Common Pleas of Clinton County Civil Division at No(s):
1690-2019

BEFORE:  OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:        **FILED: JANUARY 14, 2022**

Richard C. Bowman, III (Bowman III) appeals from the order in the

Court of Common Pleas of Clinton County (trial court) granting the motion for

contempt of R.C. Bowman, Inc. (R.C. Bowman).  We reverse the finding of

contempt and correspondingly vacate the imposition of sanctions.

The background facts of this matter are contentious and we recite only

those necessary for this appeal from our independent review of the record and

the trial court's December 4, 2020 and May 21, 2021 opinions.

**I.**

R.C. Bowman was incorporated on April 19, 1999, with Richard C.

Bowman, Jr., Robert K. Bowman (Rob Bowman) and Bowman III each having

_____

[*] Retired Senior Judge assigned to the Superior Court.

a one-third interest in said corporation. Rob Bowman and Bowman III are twin brothers and Richard C. Bowman, Jr. is their father. Bowman III was president, shareholder and employee of the corporation since its founding until a February 8, 2019 shareholders' meeting he failed to attend despite notice. At the meeting, because he received no nominations as a director or officer, he was removed as president. He remained an employee until his March 25, 2019 termination and continues to be a one-third shareholder.

On April 8, 2019, Bowman III established a new corporation, Richard C. Bowman, III, Inc. Since May 13, 2019, Richard C. Bowman, III, Inc., trading as Bowman Excavating, Paving and Concrete, has conducted a business in direct competition with R.C. Bowman.

On December 12, 2019, R.C. Bowman filed a complaint against Bowman III setting forth five counts, including misappropriation of trade secrets pursuant to the Pennsylvania's Uniform Trade Secrets Act (PUTSA), 12 Pa.C.S. §§ 5301-5308.[1]

In anticipation of litigation, R.C. Bowman created a spreadsheet containing a customer list of its larger repeat customers and entered it as

---

[1] On November 18, 2019, Bowman III commenced litigation at docket number 1579-2019 seeking to have the court compel R.C. Bowman to produce its books and records for his inspection as a shareholder. The court consolidated the two actions for trial and denied Bowman III's action on December 4, 2020. His appeal of the denial was filed at docket number 415 MDA 2021 and is not relevant to this decision.

Exhibit 11 at trial. Pennsylvania State University (Penn State) was one of the customers on the list. On December 4, 2020, after a two-day trial that commenced on October 15, 2020, the trial court entered a verdict in favor of R.C. Bowman on its trade secret action, limited solely to the Exhibit 11 customer list. The trial court ordered that:

> Richard C. Bowman, III may not contact any entity listed "on the customer list" admitted as R.C. Bowman, Inc.'s Exhibit "11" – for the purposes of soliciting business for Richard C. Bowman, III, Inc., t/a Bowman Excavating, Paving and Concrete.

(Order, 12/04/20, at 2) (pagination provided).[2]

On April 8, 2021, R.C. Bowman filed a motion for a citation for civil contempt (contempt motion) in which it asserted that Bowman III was in contempt of the court's December 4, 2020 order because he "continues to solicit business from the customers on Exhibit 11, based upon the fact that he is bidding for jobs with Penn State … [and] it appears that [he] will be awarded a Penn State contract, for which R.C. Bowman, Inc., also bid." (Contempt Motion, 4/08/21, at 1). Bowman III filed an answer to the contempt motion in which he responded that he did not solicit business from Penn State, but that Penn State contacted him and invited him to bid on projects, "as were

_____

[2] Bowman III filed an appeal at docket number 416 MDA 2021 challenging the trial court's finding that the Exhibit 11 customer list was a trade secret. That appeal is presently before this Court and is not the subject of this decision. We presume, for purposes of this appeal, that the trial court properly found that the Exhibit 11 customer list was a trade secret.

many other companies, including, but not limited to R.C. Bowman[.]" (Answer and New Matter to Contempt Motion, 4/20/21, at 2) (pagination provided). The court conducted a hearing on the contempt motion on April 29, 2021, at which Bowman III and Rob Bowman testified.

Rob Bowman testified that R.C. Bowman had filed an application for prequalification with Penn State that was approved and, thereafter, R.C. Bowman would get invitations to bid on projects from Penn State. He maintained that a company had to be prequalified to do any work at Penn State. Several companies bid on a project at Penn State in 2021. The Penn State bid results reflected, in pertinent part, that Bowman III had the lowest bid of $128,047.00, a company owned by a former employee of R.C. Bowman came in second and R.C. Bowman was third lowest. Rob Bowman agreed that he did not know if Bowman III contacted Penn State seeking work other than submitting his company's bid. (**See** N.T. Hearing, 4/29/21, at 10-12, 15-16); (R.C. Bowman's Exhibit 3, Penn State Bid Result).

Bowman III testified that prior to being terminated in March 2019, he was aware that R.C. Bowman had bid for and done projects for Penn State and that the bid results were public knowledge. He was aware that several other companies also did work for Penn State because he could see the bid results. Bowman III testified that Penn State emailed him about projects inviting his company to bid on them. In late summer of 2019, his company completed one contract for Penn State. In the summer of 2020, he applied

for prequalification with Penn State, but was denied; however, not all Penn State projects required prequalification. He testified that he did not unilaterally contact Penn State soliciting business in any way after the December 4, 2020 order was issued. In 2021, Penn State emailed him to invite his company to bid, and in response, he bid on six or seven projects. He was awarded one of them. Work had not commenced at the time of the hearing, but he intended to perform it. He intended to continue submitting bids if he received an invitation to do so and to then do the work if he received the contract. He did not believe that submitting bids for projects that Penn State invited him to bid on violated the court's December 4, 2020 order because his understanding was that he was not to solicit any customers on Exhibit 11, which he understood as actively reaching out and requesting work. He conceded that he submitted the bids to Penn State "for the purpose of soliciting business for Richard C. Bowman, III, Inc[.]" (**Id.** at 34); (**see id.** at 20-25, 27-33); (Bowman III Exhibits 1 & 2, Feb. 17, 2021 Emails from Penn State to Bowman III).

On May 21, 2021, after briefing by the parties, the court entered an opinion and order that found Bowman III in contempt because submitting bids to Penn State for the purpose of soliciting business "is a clear violation of the December 4, 2020 [o]rder … prohibiting contact by [Bowman III] with any previous customer of [R.C. Bowman] contained in Exhibit "11"." (Trial Court Opinion, 5/21/21, at 3). It explained that "[a]lthough the process may have

begun prior to this [c]ourt's [o]rder of December 4, 2020, [Bowman III] continued the process after December 4, 2020 which is in violation of this [c]ourt's order and is contemptuous." (*Id.* at 6). The court declined R.C. Bowman's request that it order Bowman III to decline the award of the Penn State bid because it could cause Penn State harm. Instead, it imposed a monetary sanction of $5,000.00 and warned that "any future violation will result in substantial monetary sanction." (*Id.*).

Bowman III timely appealed and filed a statement of errors complained of on appeal pursuant to this Court's order. The trial court filed a Rule 1925(a) opinion on July 19, 2021, in which it relied on it May 21, 2021 opinion. *See* Pa.R.A.P. 1925.

Bowman III argues that the court erred: (1) in holding him in contempt where the December 4, 2020 order was ambiguous and R.C. Bowman failed to provide evidence that he acted with wrongful intent, and (2) in awarding damages that were punitive, unreasonable, arbitrary and excessive.[3] (*See* Bowman III's Brief, at 4-5, 15-25).

---

[3] "[A]ppellate review of a finding of contempt is limited to deciding whether the trial court abused its discretion." *Lachat v. Hinchcliffe*, 769 A.2d 481, 487 (Pa. Super. 2001) (citation omitted).

**II.**

"With respect to civil contempt,[4] it is axiomatic that courts have always possessed the inherent power to enforce their orders and decrees by imposing sanctions for failure to comply with said orders. The order that forms the basis for the contempt process in civil proceedings must be definitely and strictly construed." ***Wood v. Geisenhemer-Shaulis***, 827 A.2d 1204, 1207 (Pa. Super. 2003) (citation, bracket and internal quotation marks omitted). "[I]n proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by [a] preponderance of the evidence that the defendant is in noncompliance with a court order." ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted).

> To be punished for contempt, a party must not only have violated a court order, but that order must have been **definite, clear, and specific**—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. … To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. …

---

[4] It is undisputed that the contempt proceeding in this case was civil in nature. (***See*** Trial Ct. Op., 5/21/21, at 3-4).

***Stahl v. Redcay***, 897 A.2d 478, 489 (Pa. Super. 2006), *appeal denied*, 918

747 (Pa. Pa. 2007) (citation and internal quotation marks omitted).   Put

succinctly, "the alleged contemnor must know of the prohibited conduct, with

any ambiguities, omissions, or uncertainties in the order construed in favor of

the alleged contemnor, the act constituting the violation must be deliberate,

and the act of the alleged contemnor must have been done with improper

intent."   ***Sutch v. Roxborough Mem'l Hosp.***, 142 A.3d 38, 68 (Pa. Super.

2016), *appeal denied*, 163 A.3d 399 (Pa. 2016) (citations omitted).

The trial court explains that, in this case:

Richard C. Bowman, III had notice of the specific [o]rder and the contact by [him] to Penn State [] by submitting a bid was volitional.  The [c]ourt also finds that [] Richard C. Bowman, III's contact with Penn State University was carried out with wrongful intent.

The litigation in this case concerned the fear of [] R.C. Bowman, Inc. that [] Richard C. Bowman, III would utilize the knowledge and information[5] that [he] had obtained while employed and acting as an officer of [R.C. Bowman] to [his] benefit and [R.C. Bowman]'s detriment.  [Bowman III] wasted little time in confirming [R.C. Bowman]'s fear by utilizing a customer list and knowledge that [he] had obtained while at [R.C. Bowman]'s business to attempt to be prequalified for bidding

---

[5] In the underlying matter, the court denied R.C. Bowman's request that Bowman III be enjoined from using the skill and knowledge he acquired by being an employee, only granting the PUTSA claim as to the Exhibit 11 customer list.  (**See** Trial Court's Opinion, 12/04/20, at 15-16) (noting that although R.C. Bowman "claims that [Bowman III's] new business is utilizing the skill and knowledge that [he] acquired while [at R.C. Bowman,]" "a trade secret does not include a worker's aptitude, skill dexterity, or his manual or mental ability."); (Order, 12/04/20, at 2) (pagination provided).

purposes at Penn State [] while this litigation was pending and then submitted bids thereafter.

… Richard C. Bowman knew that [o]rder existed and moved forward with the bids. Therefore, the actions were volitional. Finally, the contemptor, Richard C. Bowman, III acted with wrongful intent. It is clear that Richard C. Bowman, III has violated this [c]ourt's previous [o]rder of December 4, 2020 and that [he] is in contempt.

… [Bowman III] has admitted [his] contact with Penn State [] was to solicit business for [his company]. [He] had approached Penn State [] and continued to approach and solicit business [there]. Although the process may have begun prior to this [c]ourt's order of December 4, 2020, [Bowman III] continued the process after December 4, 2020 which is in violation of this [c]ourt's [o]rder and contemptuous.

(Trial Ct. Op., 5/21/21, at 4-6) (record citation omitted).

In interpreting the court's order, we will first look to its words and then, if necessary, to the statement or documents of record at the time it was made. *See Com. ex rel. Brennan v. Brennan*, 195 A.2d 150, 151 (Pa. Super. 1963). Bowman III first argues that the December 4, 2020 order "is clearly ambiguous regarding whether it prohibited [him] from working for customers on Exhibit 11 that initially contacted him." (Bowman III's Brief, at 20).[6] He

---

[6] R.C. Bowman responds that this argument "is absurd [and] if [Bowman III] actually believed the language was ambiguous, he had the affirmative obligation to seek clarification from the [c]ourt[,] [r]ather than … willfully bid[ding] contracts with a customer listed on R.C. Bowman Trial Exhibit 11[.]" (R.C. Bowman's Brief, at 12). First, R.C. Bowman provides no legal authority for its claim. Furthermore, we do not find this argument to be persuasive where, according to his testimony, Bowman III thought he understood what the order meant until the contempt motion was filed.

maintains that he did not violate the order because he did not unilaterally contact Penn State to solicit business where the university advertised its bid to a list of contractors, including him. (*See id.* at 20-23).

The December 4, 2020 order granted R.C. Bowman's action under the PUTSA. The court found Exhibit 11 was a trade secret and, thus, enjoined Bowman III from contacting anyone on that list to obtain business for his competing company. (*See* Order, 12/04/20, at 2) (pagination provided) (Bowman III "may not contact any entity listed on the customer list admitted as R.C. Bowman, Inc.'s Exhibit "11" – for the purposes of soliciting business."); (Trial Court Opinion, 12/04/20, at 16).

However, we cannot find that the order's language was "definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." *Geisenhemer-Shaulis*, *supra* at 1207 (citation, bracket and internal quotation marks omitted).

After the order's entry, Penn State contacted Bowman III and other contractors, including R.C. Bowman, via email, with a notification about an opportunity to bid on projects. (*See* R.C. Bowman's Hearing Exhibits 1 & 2). Upon receiving this contact, Bowman III responded to Penn State by sending a bid. Although Bowman III admitted at the hearing that his purpose for submitting the bid was to solicit business for his company, he also testified that, based on the language of the order, he did not believe this was a violation

- 10 -

because he did not reach out to the customer first to solicit work. (*See* N.T. Hearing, at 34-35).

The order was premised on a finding that the customer list was a trade secret that Bowman III should be precluded from using to contact customers to solicit business for his company. Bowman III did not use the customer list and his knowledge of Penn State was not a trade secret. Based on a plain reading of the order, it was not unreasonable for Bowman III to understand it to mean that, although he was precluded from using the customer list to reach out to a customer, if they reached out to him, it was not a violation to send a bid and do any work he was awarded.

Strictly construing the December 4, 2020 order that only provided that Bowman III may not contact any entity listed "on the customer list" and resolving any ambiguities or omissions in favor of Bowman III, this language does not forbid Bowman III from working for those on that list if they seek him out to perform work. *See Redcay*, *supra* at 489 (language of contempt order must be "definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct" to find party in contempt.).[7]

_____

[7] Because of the way we resolve this matter, we need not address Bowman III's claim that wrongful intent was not established by direct or even persuasive circumstantial evidence under the circumstances. We also do not need to address Bowman III's claim that the $5,000 punitive damages imposed were punitive, unreasonable, arbitrary and excessive because the issue is moot.

Accordingly, we reverse the trial court's order holding Bowman III in contempt and correspondingly vacate the imposition of sanctions.

Order reversed and vacated. Case remanded. Jurisdiction relinquished.

Judge Olson joins the memorandum.

Judge Kunselman files a dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2022