J-S39001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| T.J.N. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.M. | : | |
| | : | |
| Appellant | : | No. 903 MDA 2023 |

Appeal from the Order Entered May 24, 2023
In the Court of Common Pleas of York County Civil Division at No(s):
2009-FC-001666-03

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY DUBOW, J.:                **FILED: DECEMBER 13, 2023**

K.M. ("Mother") appeals from the May 24, 2023 order entered in the York County Court of Common Pleas which, *inter alia*, awarded Mother and T.J.N. ("Father") shared legal custody of their thirteen-year-old child, R.V. ("Child") and awarded Mother primary physical custody of Child.[1]  The trial court also found both parents in contempt of a previous custody order.  Mother raises challenges to the trial court's award of shared legal custody as well as the court's finding that she was in contempt.  Upon review, we affirm.

The following factual and procedural history is relevant to this appeal. Mother and Father were never married, ended their relationship shortly after Child's birth in July 2009, and have been involved in custody litigation since

---

[1] While the trial court's docket utilized the parents' names, the parties used their initials on their briefs to this Court.  We have changed the caption to the parties' initials to prevent the identification of Child.  Pa.R.A.P. 904(b)(2); Super. Ct. I.O.P. 65.44(B).

September 2009. Both parents have filed numerous petitions for modification and/or contempt, and legal and physical custody arrangements have alternated throughout the years. Notably, since 2014, parents have shared legal custody of Child.

Relevant to this appeal, on September 2, 2021, the trial court issued a custody order that awarded shared legal custody of Child to Mother and Father, primary physical custody to Mother, and partial physical custody to Father on alternating weekends and one evening every other week during the school year. The September 2, 2021 custody order also included instructions on how the parties should communicate through OurFamilyWizard in a brief, "neutral, business-like tone" without swear words or multiple exclamation points as well as an "Extracurricular Activities" section that provided, *inter alia*, that "[n]either parent shall commit [] Child to activities that fall on the other parent's period of custody, without the consent of the other parent, which consent shall not be unreasonably withheld." Order, 9/2/21, at 6, 8.

Most recently, on October 12, 2022, Mother filed a petition for contempt and modification requesting that the trial court find Father in contempt of the September 2, 2021 custody order and grant Mother sole legal and physical custody. In the petition, Mother specifically averred that Father refused to allow Child to take prescribed ADHD medication while in his care, refused to transport Child to extracurricular activities such as field hockey, continued to make disparaging comments about Mother, and failed to follow the communication rules provided in the previous custody order. Mother's Petition

for Contempt and Modification, 10/12/22, at ¶¶ 7-10. In response, on December 28, 2022, Father filed a petition for contempt averring, *inter alia*, that Mother was resistant to enrolling Child in therapy, cancelled a telemed appointment that Father scheduled for Child at Wellspan Behavioral Health to review medication, and failed to comply with Father's request that Mother submit to a drug test. Father's Petition for Contempt, 12/28/22, at ¶¶ 6, 12, 14. On April 12, 2023, Father filed a second contempt petition averring, *inter alia*, that Mother failed to seek Father's consent for Child to participate in the Central Penn Field Hockey ("CPFH") club team during the spring season, failed to inform Father about scheduled field hockey games, withheld custody of Child from Father on various occasions, and continues to alienate Child from Father. Father's Petition for Contempt and Special Relief, 4/12/23, at ¶ 9, 15-17, 18, 30-33, 41.

To address the parties' petitions, the court held a two-day-long custody trial on May 15, 2023, and May 18, 2023. The court heard testimony from Mother; Father; Tonya Noye, Father's wife; Belinda Heltzel, Director of CPFH; and Child. The trial court authored a thorough and accurate summary of testimony, which we adopt for purposes of this appeal. Trial Ct. Op., 5/24/23, at 2-10.

At the conclusion of the trial, the court issued an order and opinion in which the court considered the 23 Pa.C.S. § 5328 custody factors and found two factors to favor Father, six factors to favor Mother, and the rest to be neutral. Based on its consideration of the Section 5328 custody factors, the

- 3 -

trial court denied Mother's request for sole legal and physical custody of Child. Instead, the court maintained the status quo, by awarding shared legal custody to both parents, primary physical custody to Mother, and partial physical custody to Father on alternating weekends and one evening every other week during the school year, and alternating weeks during the summer months.

Additionally, the trial court found Mother in contempt of the September 2, 2021 custody order for enrolling Child in CPFH without consulting Father but declined to order a sanction. Finally, the trial court found Father in contempt for willful violations of the communication protocols set forth in the September 2, 2021 custody order and ordered Father to pay a $1500 sanction. The court granted Father's request for a parent coordinator, but ordered Father to fund the parent coordinator as follows: $1500 from his own funds and $1500 from the sanction.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

A. Did the trial court err as a matter of law and abuse its discretion when finding that shared legal custody remains in the best interest of [] Child?

B. Did the trial court err as a matter of law and abuse its discretion when it found Mother to be in contempt of shared legal custody for not seeking Father's consent prior to permitting [] Child to participate in a field hockey club tryout?

C. Did the trial court err as a matter of law and abuse its discretion when indirectly sanctioning Mother by refusing to analyze and

- 4 -

consider her request for sole legal custody in complete disregard of the best interest of [] Child?

D. Did the trial court err as a matter of law and abuse its discretion when imposing a contempt sanction that is only enforceable upon Father's voluntary compliance?

Mother's Br. at 4.

## A.

In her first issue, Mother challenges the trial court's award of shared legal custody. *Id.* at 4. This court reviews a custody determination for an abuse of discretion, and "our scope of review is broad." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error suffered prejudice from the mistake. *J.C. v. K.C.*, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

Legal custody is defined as "[t]he right to make major decisions on behalf of the child, including, but not limited to, medical, religious and

educational decisions." 23 Pa.C.S. 5322(a). The Custody Act requires a trial court to consider all of the Section 5328(a) custody factors when "ordering any form of custody," including legal custody, and further requires the court to give "weighted consideration to those factors which affect the safety of the child[.]" 23 Pa.C.S. § 5328(a). While a trial court must consider each of the statutory factors in accordance with Section 5328, "the amount of weight that a court places on any one factor is almost entirely discretionary." **O.G. v. A.B.**, 234 A.3d 766, 777 (Pa. Super. 2020). Moreover, a trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D.**, 96 A.3d at 401. **See also** 23 Pa.C.S. § 5323 (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013).

When reviewing child custody matters and the trial court's consideration of the Section 5328(a) custody factors, our paramount concern is the best interests of the child. **See Saintz**, 902 A.2d at 512 (explaining that this Court's "paramount concern and the polestar of our analysis" in custody cases is the best interests of the child) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **D.K.D. v. A.L.C.**, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive,

- 6 -

all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." *S.C.B. v. J.S.B.*, 218 A.3d 905, 916 (Pa. Super. 2019). Finally, in any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent and no preference based upon gender. 23 Pa.C.S. §§ 5327(a) and 5328(b).

Instantly, Mother avers that the trial court abused its discretion when it denied her request for sole legal custody of Child and, instead, found that awarding shared legal custody to both parents was in Child's best interest. Mother's Br. at 4. Mother argues that the trial court failed to consider the parents' high level of conflict and communication issues, Father's "communication abuse," Father's refusal to cooperate with Child's ADHD diagnosis and treatment, Father's refusal to cooperate with Child's extracurricular activities, the impact of Father's behavior on his relationship with Child, and the fact that Father is unwilling to cooperate in Child's best interests. *Id.* at 22-36. Essentially, Mother argues that the trial court's award of shared legal custody is against the weight of the evidence.

We are unpersuaded by Mother's argument that the trial court should have focused more on Father's transgressions to ultimately determine that she should have the sole right to make major decisions on behalf of Child. Indeed, the trial court did consider Father's actions, including his problematic communications, and found that they did not impact his ability to make

decisions on behalf of Child. The trial court found that it was in Child's best interest to maintain the status quo and award shared legal custody to parents. The court opined:

> As a general matter, this [c]ourt only strips a parent of legal custody only in extreme circumstances. Furthermore, this [c]ourt is reluctant to give one parent sole legal custody when that parent's hands are not entirely clean when it comes to the exercise of joint legal custody. This [c]ourt found that Father should continue to enjoy joint legal custody. There is no question, but that Father's communications are problematic at times. This [c]ourt, however, does not find that the communication issues have reached the point that Father's ability to participate in the important issues involving his daughter [should] be stripped from him.

Trial Ct. Op., 6/30/23, at 1-2. The trial court's award of shared legal custody attempts to assure that Child maintains a healthy relationship with both of her parents, and that the parents work together to raise Child by both making decisions about Child's life. Upon review, the record supports the trial court's findings, and we decline to reweigh the evidence. Accordingly, we find no abuse of discretion.

**B.**

In her second issue, Mother avers that the trial court abused its discretion when it found Mother to be in contempt for not seeking Father's consent prior to permitting Child to participate in CPFH club team tryouts. Mother's Br. at 4. Mother argues that she acted in Child's best interest, and not with wrongful intent, when she took Child to tryouts for a club field hockey team. *Id.* at 40. Mother further argues that Child had been playing field

hockey for several years and Mother was just promoting the "status quo" and acting as "coordinator" of Child's extracurriculars. **Id.**

We review a contempt order for a "clear abuse of discretion." **Chrysczanavicz v. Chrysczanavicz**, 796 A.2d 366, 368 (Pa. Super. 2002) (citation omitted). We give great deference to the trial court's findings. **Id.** Our review is, thus, "confined to a determination of whether the facts support the trial court's decision." **Id.** at 368-69 (citation omitted).

"In civil contempt cases, the complaining party has the burden of proving non-compliance with the court order by a preponderance of the evidence." **Stahl v. Redcay**, 897 A.2d 478, 489 (Pa. Super. 2006) (citation omitted). To sustain a contempt finding, the complainant must prove: "(1) that the contemnor had notice of the specific order or decree which [s]he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Id.** (citation omitted).

At the time that Mother drove Child to tryouts for the CPFH club team, both parents were operating under the September 2, 2021 custody order. As explained above, that order contained an "Extracurricular Activities" provision, which stated that "[n]either parent shall commit [C]hild to activities that fall on the other parent's period of custody, without the consent of the other parent, which consent shall not be unreasonably withheld." Custody Order, 9/2/21, at 6.

- 9 -

While Mother argues that she did not have wrongful intent in taking Child to CPFH club team tryouts without first informing Father, the trial court disagreed. The trial court emphasized the fact that Mother knew Child would be excited about making the CPFH team—that required more time, travel, and money—and that Father would have no choice but to agree to Child's participation or face further alienation from Child. The court opined:

> Mother had to have known that Child would be excited about the prospect of playing for CPFH after she made the team. Playing for CPFH requires a substantial financial commitment as well as a commitment of time on the weekends, which would have necessarily include an intrusion on Father's time. Mother's decision to take Child to the tryouts without any advanced notice constitutes a clear violation of Father's rights under joint legal custody.

Trial Ct. Op., 5/24/23, at 20. The court further opined, "[t]his act essentially bound Father to agreeing to the new field hockey program so as to avoid further alienating Child from Father." Trial Ct. Op., 6/20/23, at 2. Finally, the trial court found Mother's actions to be "volitional and willful." *Id.* We defer to the trial court's findings, which are supported in the record. Accordingly, we find no abuse of discretion.

**D.**

In her third issue, Mother asserts for the first time on appeal that the trial court erred when it indirectly sanctioned her by refusing to consider her request for sole legal custody. Mother's Br. at 4. In her fourth issue, Mother avers, also for the first time on appeal, that the trial court erred when it imposed a contempt sanction on Father that is only enforceable upon Father's

voluntary compliance. *Id.* Both issues are waived because Mother failed to include them in her Rule 1925(b) statement. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Id.* at 1925(b)(4)(vii) ("Issues not included in the [s]tatement . . . are waived.").

**E.**

In conclusion, the trial court did not abuse its discretion when it awarded shared legal custody to Mother and Father and found Mother in contempt of the September 2, 2021 custody order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/13/2023</u>